# CHARLESTON.

## STATE v. WILLIAMS.

### Decided March 16, 1901.

1. INDICTMENT—*Omission—Grand Jury.*
    An indictment is not bad for its omission to state that the grand jury was attending the court. (p. 221).

2. COURT—*May Withdraw Juror—Waiver.*
    A court in a felony case may, for good cause, without the consent of the accused, withdraw a juror, and substitute another. The accused is entitled to a peremptory challenge of such juror, but must claim it, else he waives it. (p. 221).

3. EVIDENCE—*Rebuttal—Court's Discretion.*
    Whether a party shall introduce further evidence after that of the adverse party has been heard, is a matter within the sound discretion of the court, and its exercise will rarely, if ever, be the cause of reversal. Clearly, he is entitled to introduce evidence to rebut that of the other party. (p. 223).

4. EVIDENCE—*Swearing Witness.*
    If a mistake in not swearing a witness is discovered before the jury retires, it may be corrected either by swearing the witness and rehearing his evidence, or by instructing the jury to disregard his evidence. (p. 222).

5. OMISSION TO SWEAR WITNESS—*Exception—Waiver.*
    If there is an omission to swear a witness, and the court instructs the jury to disregard his evidence, and the prisoner then makes no exception to the action of the court, and does not then rely on such omission, he cannot, for that cause, sustain a motion to set aside the verdict. (p. 222).

Error to Circuit Court, Raleigh County.

James P. Williams was convicted of murder, and brings error.

*Affirmed.*

T. G. MANN and T. N. READ, for plaintiff in error.

EDGAR P. RUCKER, ATTY. GEN. and LUTHER C. ANDERSON, for the State.

BRANNON, PRESIDENT:

James P. Williams was sentenced to the penitentiary upon a conviction of murder in the second degree in killing John Meadows, for the term of ten years by the circuit court of Raleigh County, and he asks this Court to reverse that sentence on several grounds.

One of his objections against the judgment is the refusal of the court to hold the indictment bad for omitting to state that the grand jury was in attendance upon the circuit court of Raleigh County. That is not material in the indictment. It does not enter into the charge. Its omission could not prejudice the accused. The record shows an indictment in that court, and the grand jury must have been attending that court and none other.

Another complaint is that the court withdrew one of the jurors after a portion of the evidence had been introduced, and substituted another one, without obtaining the consent of the prisoner, and without tendering the prisoner a peremptory challenge to the new juror. In *State* v. *Davis,* 31 W. Va. 390, under Code chapter 159, section 7, the authority of the court, where the necessity exists, of withdrawing a juror and substituting another, is fully asserted even against the explicit protest of the party on trial. It does not appear what the reason of this withdrawal of a juror was; but we must presume that it was sickness or other good cause until it otherwise appears, as the law presumes that the court performs its legal duty properly. *McKinney* v. *Poeple,* 7 Ill. 540. Error is not presumed. If no proper reason existed, the prisoner could have shown it by bill of exceptions, but has not done so. *State* v. *Davis, supra,* says the court has authority to withdraw a juror in a proper case, and he who asserts that a proper case did not exist, ought to be called upon to show it. Another consideration is that the prisoner made no objection to this withdrawal, and never said anything against it until he em-

bodied it in a motion for a new trial. I need not cite law to show that there must be an exception to the action of the court at the time it takes place, and that a party cannot be silent, take his chances of a favorable verdict, and if it is against him, impeach it for that cause. *Greenbrier Indus. Expo.* v. *Ocheltree,* 44 W. Va. 626. As to the right of peremptory challenge. The prisoner did not ask it. It was a right which he could waive. Nobody denied it. The court could not thrust it upon him. A party must assert a right which is waivable by him.

Another objection of the prisoner is that the court refused a new trial because a witness for the State had given evidence without being sworn. No one denies that a witness must be sworn. Verdicts have been set aside for the omission to swear a witness. *Hawks* v. *Baker,* 6 Me. 72, cited in 29 Am. & Eng. Ency. L. 764. In the present case the omission was discovered before the jury retired, and the evidence of this witness was by the court stricken from the case, and the jury instructed by the court not to consider such evidence, and there was no objection or exception to the action of the court in this respect. The prisoner never mentioned it until after the verdict, and not even then on his first motion for a new trial, but later assigned it as a further ground for a new trial. 1 Thompson on Trials, s. 365, says: "It is the duty of the party calling the witness to see that he is sworn; though if the oath is inadevertently omitted, the objection will not be good after verdict." In *Slauter* v. *Whitelock,* 12 Indiana 338, it is held that if the omission is discovered before the jury retires, it may be cured either by swearing the witness and rehearing his testimony, or the jury may be instructed to disregard his statement. The latter course was adopted in this case. In *Cady* v. *Norton,* 14 Pick. 236, it was held that where a witness had testified to material facts without being sworn, and the circumstance came to the knowledge of the defendant during the argument of counsel, but after the witness had gone, it was too late to object to the verdict. Chief Justice Shaw said that where a defect is known and not seasonably taken advantage of, it is deemed waived, and that a party could not take his chance for a favorable verdict with the power and intent to annul it is erroneous, if it should come out against him. The prisoner did not object to the jury going on to consider the case, but by his silence seemed satisfied with the action of the court in excluding the evidence and directing the jury to disregard it. And can we

say that it was solely the duty of the State to have the witness sworn. In *Trammell & Co.* v. *Mount,* 68 Texas 210, 2 Am. St. R. 479, it is held that a party allowing a witness to testify unsworn waives any objection to it on that score. See to similar import *Nesbitt* v. *Dallam,* 7 Gill & John, 494, 28 Am. Dec. 236. I hold this point insufficient to set aside the verdict for two reasons. First, the court struck out the evidence and directed the jury to disregard it. Second, the prisoner knew it before verdict, made no exception to it, assented thus to the action of the court in excluding the evidence and took his chances before the jury. I should add another reason, and it is this: The most material part of the evidence of the witness was, that shortly after the shooting she heard Williams say, "Yes, by God, I'll shoot some of the rest of the damn sons of bitches if they fool with me." Now, the prisoner admitted that he shot Meadows, as a witness. The main fact that the unsworn witness deposed to was this declaration, which was abundantly shown, and was a *concessum.* The case turned, not on whether the prisoner had killed Meadows, but on the question whether he was entitled to be acquitted upon the ground of self defense. This unsworn witness deposed nothing bearing on the question of self defense. She did not see the shooting, or give evidence upon its circumstances. Her evidence bore on no material aspect of the case. At least it could have not exerted any positive effect upon the question of self defense, threw no light upon it. We would not set aside the verdict for failure to swear the witness when his evidence was not material, or want to prove a fact not controverted in the case.

Another objection is to the admission of the evidence of Pierce Young. The only ground specified under this head is that Young was allowed to testify after both the State and prisoner had introduced their evidence,—that is in rebuttal of the prisoners evidence. It certainly ought not to be the law that where evidence, though in chief, is omitted to be introduced in its proper place, it is forever lost to the party; for it is well settled that the order of introducing evidence, the time of its introduction, and whether a party shall introduce further evidence after that of the adverse party has been heard, is a matter within the discretion of the trial court, and its exercise will rarely, if ever, be ground for reversal. *Livingstone's Case,* 7 Grat. 658; *Johnson* v. *Burns,* 39 W. Va. 658; *Perdue* v. *Caswell Coal Co.,* 40 *Id.* 372; *McManus*

v. *Mason,* 43 *Id.* 196. But this was rebuttal evidence, and the prisoner had the right to give evidence to meet it. And it was not material, and could have exercised no weight in the case.

Another objection of the prisoner is the giving of certain instructions for the State, and the refusal to give certain ones for the prisoner. The question before the jury was whether the act of Williams in killing Meadows was murder, manslaughter or homicide in self-defense. The numerous instructions given for the State, seven in number, involve no new principles, but are justified by numerous decisions in this State upon the sworn subject of murder and homicide in self-defense, such as *State* v. *Grier,* 22 W. Va. 800; *State* v. *Jones,* 20 *Id.* 764, and *State* v. *Cain,* 20 *Id.* 679, and others. It would be useless to incorporate these instructions, or to discuss them. When the Constitution says that this Court shall give its reasons for decisions, it cannot surely mean that in case after case it shall discuss and re-discuss principles settled over and over again. The provision must receive a reasonable construction, like all other statute and constitutional provisions. It means that in cases of novelty, cases of first impression, cases involving the construction of new statutes, cases involving law points not before well settled, the Court shall file opinions giving such reasons. This Court has, ever since the adoption of the Constitution of 1872, pursued the course, in every case, of writing opinions, and many of them are but the iteration and reiteration of old and worn principles. In many of them only judgment or decree should have been rendered or pronounced without written opinions. The Constitution intended nothing else. As to the instructions of the prisoner refused: The court gave eleven elaborate instructions for the prisoner, and refused six. Some of the rejected instructions propound bad law, denying the legal principle that where a homicide is proven, it is presumed to be murder, and if the prisoner would lower it to manslaughter, or exculpate himself entirely from responsibility on the plea of self-defense, he must prove it to the satisfaction of the jury, and that the State cannot be called upon to negative self-defense. Every instruction that was refused, and that could be said to be good in law, was covered by, and included in the instructions given for the prisoner. A court need not give several instructions of the same identical import. It only confuses the jury. Surely no harm was done to the prisoner in the matter of instructions.

Lastly, as to the refusal of the court to grant a new trial on the ground that the verdict was contrary to the evidence, I will only say that the killing of Meadows was overwhelmingly proven and conceded, and the only question was whether it was murder, manslaughter or homicide in self-defense, purely questions of fact for the consideration of a jury, upon a great volume of evidence of many witnesses. Upon familiar principles we must decline to usurp the prerogative of a jury and pass on the credit of witnesses and the weight of their testimony, and reverse their finding approved by the circuit court. I think the verdict is warranted by the evidence most clearly, if my opinion is worth anything, or has any relevancy to the case, which it has not on this point. Justice has been done between the people and the prisoner. We decline to thwart justice upon trivial and unsubstantial grounds, and therefore we affiarm the judgment.

*Affirmed.*