# CHARLESTON.

JOHN WILLS, *Administrator, etc. v.* MONTFAIR GAS COAL
COMPANY *et al., Defendants Below.*

MONTFAIR GAS COAL COMPANY, *Plaintiff in Error.*

(No. 5825)

Submitted May· 3, 1927.      Decided May 31, 1927.

1. MASTER AND SERVANT—*Verdict Against Master Without Mentioning Servant, Joint Tort Feasor Must Stand, Unless Damages Were Caused Solely by Servant's Act.*

Where a master and servant are sued for damages occasioned by their negligence as joint tort feasors, and the verdict is against the master and silent as to the servant, the verdict will not be set aside under the doctrine of *respondeat superior*, unless it be shown that the damages were occasioned solely by the act of the servant, and the master could in no way be liable except for that act. (p. 16.)

(Master and Servant, 39 C. J. § 1602.)

2. APPEAL AND ERROR—*Erroneous Instruction Which Findings of Fact Show Harmless Does Not Require Setting Verdict Aside; Instructions on Failure to Furnish Reasonably Safe Place to Work or Reasonably Safe Appliances of Which There Was no Evidence Held Erroneous, But Harmless, Where Answers to Special Interrogatories Compelled Verdict Rendered.*

A verdict will not be set aside because of an erroneous instruction, where the jury, in answer to special interrogatories, has made findings of fact which show the instruction, if considered, was harmless. (p. 22.)

(Appeal and Error, 4 C. J. §§ 3013, 3028.)

3. DEATH—*Father's Contributory Negligence in Consenting to Minor Son's · Employment, Barring Recovery for Death, Held for Jury.*

Where the father consents to the employment of his minor son as "trapper" in a coal mine, and the employer puts the son to work as "snapper" or brakeman therein (a more dangerous employment), against the express injunction of the father and without his knowledge or consent, as claimed by the father, but on the other hand, claimed to have been done with the express consent of the father; and the son receives fatal injuries while serving as "snapper," from natural,

probable and anticipated causes incident to such employ-
ment, the question of contributory negligence on the part of
the father in giving his consent to the employment and
barring him from recovery as sole distributee of the minor
son's estate, is for jury determination.   (p. 20.)

(Death, 17 C. J. § 180; Parent and Child, 29 Cyc. p. 1649.)

4.   APPEAL AND ERROR—TRIAL—*Ruling on Order of Evidence
and Time of Introduction is Rarely Ground for Reversal;
In Action for Death in Coal Mine, Admitting in Rebuttal
Testimony for Plaintiff That Deceased Appeared Under
Sixteen Years Old Held Not Error.*

The order of evidence and the time of its introduction, and
whether a party shall introduce more evidence after that of
the adverse party, are matters within the discretion of the
trial court, and its exercise will rarely be ground of reversal.
(p. 25.)

(Appeal and Error, 4 C. J. §§ 2786, 2787; Trial, 38 Cyc. pp. 1353,
1357.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
part of syllabi.)

Error to Circuit Court, Marion County.

Action by John Wills, administrator of Tony Wills, de-
ceased, against the Montfair Gas Coal Company and another.
Judgment· for plaintiff against the named defendant, and it
brings error.

*Affirmed.*

*Tusca Morris* and *Houston G. Young,* for plaintiff in error.
*Shaw & Shaw* and *Poffenbarger, Blue & Dayton,* for de-
fendant in error.

LIVELY, JUDGE:

John Wills, Administrator of Tony Wills, deceased, sued
defendant Coal Company and Thomas Jarrett for the death
of Tony, alleged to have been caused by their joint negligence
and carelessness; and upon a verdict of $8,000.00 against the
Company, judgment was entered from which the Coal Com-
pany prosecutes error.

Tony Wills was employed in defendant Coal Company's
mine, and at the time of his death, April 10, 1920, was work-
ing as a brakeman or "snapper" on a gathering motor train
in a part of the mine designated as the "Third Right". Prior

to that day he was a ''trapper'', but at previous times had
worked as ''snapper''. His father, John Wills, was a track-
layer in the mine, and it appears that prior to the acquisition
of the mine by defendant November 1, 1918, the father and
son had worked in the mine, and that the latter was at the
time of purchase working as a ''snapper''. In the first month
of defendant's ownership of the mine, November, 1918, Tony's
hand was injured while he was working as a snapper, for
which injury he received compensation from the Workmen's
Compensation Fund to which defendant was always a sub-
scriber in good standing. When defendant purchased the
mine, the father, according to defendant's testimony, made
affidavit that the son was over 16 years of age. Later a mine
inspector required and was given a second affidavit signed by
the father to the effect that Tony was over 16 years of age.
The father denied ever making these alleged affidavits. They
were not produced in evidence.

From November, 1918, up to the time of his fatal injury
on April 10, 1920, Tony was employed as a trapper. On the
day of the fatal injury, there was a vacancy in the position
of ''snapper'' on the gathering motor in the ''Third Right'',
and Tony was directed to take the position, and did so. There
is a sharp controversy over this change of employment from
''trapper'' to ''snapper''. Defendant Jarrett, the mine fore-
man, says that early that morning he met John Wills and
Tony as they were going to work, and informed them of the
vacancy and asked them if Tony wanted that job having
theretofore been solicited by John to give his son more re-
munerative employment; and Tony, with the assent of the
father, took the position. John Wills, the father, denied this,
and says that he never had such a conversation, and that he
had consented only to Tony's employment as a trapper, and
had told Jarrett and his assistant, Charley Garrison, that he
did not want the boy to work other than as a trapper. Other
witnesses corroborate John Wills in this.

When Tony worked as snapper in November, 1918, the mine
foreman had instructed him about the dangers of the position,
and especially warned him not to ride on the bumpers of the
mine cars while they were in motion. Tony's father had

warned him not to ride the bumpers; and on the day he was killed he had been twice warned, once by Frank Banks, a fellow employee, who caused the motorman to stop the cars so that Tony might get off the bumper where he was riding and get inside the car or in the pit of the motor; but Tony did not leave his position on the bumper. And on the fatal trip, the motorman told him not to ride the bumper. On this last trip the motor was shoving one empty car, on the front bumper of which Tony was riding in a squatting position with his left arm over the front top of the car, when the car was derailed, causing the boy's head to be caught and crushed between the top of the car and a projecting rib of coal, resulting in almost instant death.

Three special interrogatories were propounded to the jury on motion of defendant, which were in effect as follows: 1. Was Tony 16 years old at the time of the accident? 2. In the event that the jury should find that he was not 16 years of age, then was his employment as a snapper acquiesced in or consented to either expressly or impliedly by the father, and was the employment the natural, probable and anticipated cause of the injury? 3. And should the answer of the jury be no to the first two interrogatories, then was Tony at the time of his death, possessed of such wisdom, experience and sagacity as would take him out of the class of youths under 16 years of age and make him for such reason capable of contributory negligence? To all of these interrogatories the jury answered "No". To the declaration both defendants had put in the general plea of not guilty, and had filed two special pleas, one to the effect that defendant Company had complied with the Workmen's Compensation Act and was not liable because Tony was over 16 years of age; and the other was that if Tony was under 16 years, that John Wills had consented to his employment as snapper, was his sole distributee, and was thus barred from recovery.

There are three counts in the declaration. The first count charges that defendants employed Tony Wills, who was under the age of 16 years, to work in a coal mine in which employment he was killed in the operation of the mine cars, and the unlawful employment was the cause of his death. The second

count says that John Wills, the father and plaintiff, consented to the employment of Tony in the mine to work therein as a trapper, and that afterwards defendants against the express direction of the father and against his consent, changed the employment from trapper to snapper (a highly dangerous position); and not regarding their duty, employed an incompetent and unskilled motorman to haul the cars on which Tony worked as snapper or brakeman, which motorman operated the motor negligently and carelessly, causing the cars to be derailed, catching Tony between them and the face of the coal, causing his death. The third count charges the unlawful employment of the minor son as a snapper against the express wishes and refusal of the father to consent thereto; that it was the duty of defendants to provide a safe place to work, to employ a competent motorman, make and enforce reasonable rules for the operation of the motor and cars, which duties were breached by defendants in that they did not employ a competent motorman; did not adopt reasonable rules; and did not furnish a safe place to work, but on the contrary permitted the ties, rails, tracks and roadbed to become and remain out of repair and dangerous; employed an incompetent and unskilled youth of 18 years of age as motorman, who negligently and carelessly operated the motor and cars over the defective tracks at excessive speed, which caused the cars to leave the track, thus causing the boy's death.

As above stated, the jury found the deceased to be under 16 years of age when fatally injured; that his father did not consent, either expressly or impliedly to his employment as a snapper; and that Tony was not of such experience and precocity as to render him capable of contributory negligence.

Numerous bills of exception were taken during the trial, and it is insisted that all show prejudicial error.

One alleged error is that the verdict against the Coal Company without mention of the other defendant, Thomas Jarrett a joint tort feasor, is not responsive to the pleadings and issues, and therefore the motion to set it aside should have been sustained. It is argued that as Jarrett has pleaded not guilty and the verdict is silent upon his plea, and that if it be held that the failure to render a verdict against him

exonerates him from liability, then the Coal Company is also acquitted under the doctrine of respondeat superior; that a verdict which exonerates the servant in an action against the master and servant for injuries received because of misfeasance or nonfeasance of the servant, also exonerates the master; and that inasmuch as the declaration was based on concert of negligent actions by the two defendants, and there was no claim or charge of separate cause of action against either of the defendants, there could be no separate recovery against either. To sustain this alleged error *Thomas, Guardian* v. *Northwestern Imp. Co.* and *Cadwell,* 102 Pac. (Wash.) 402; *Harbin* v. *So. Ry. Co. et al.,* 68 S. E. (Ga.) 1103; *Sipes* v. *Puget Sound Elec. Ry. Co. et al.,* 102 Pac. (Wash.) 1057; *McGinnis* v. *C. R. I. & Pac. Ry. Co. et al.,* 98 S. W. (Mo.) 590; *Stevick* v. *N. & P. Ry. Co. et al.,* 81 Pac. 999; *Lippencott Glass Company* v. *Indiana &c. Co. et al.,* 75 N. E. 649; and *Doremus* v. *Root et al.,* 63 Pac. 572, are relied upon. These cases say that where the action is a joint one against the master and the servant for negligence, and the negligence of the servant is of such a character that the master could not have been negligent unless the servant was negligent, then a verdict excusing the servant or which is silent as to his negligence, will also excuse the master, and cannot stand. If the negligent act of the servant is the sole cause of the injury and the jury finds him not guilty, then the master is not liable under the doctrine of respondeat superior. The doctrine of respondeat superior is based on the proposition that he who expects to derive advantage from an act which is done by another for him, must answer for an injury sustained by a third person from that act. *Sawyer* v. *Corse,* 17 Gratt. (Va.) 243. Where the servant's negligent act is the sole cause of the complaint, and no negligence is imputable to the master other than from the servant's act, then excuse or justification of the servant also excuses the master. This is illustrated in *Sparks* v. *Atlantic C. L. R. Co.,* 104 S. C. 266, 88 S. E. 739, where a railroad conductor ejected a trespasser from the train, causing death. The railroad company and conductor were sued jointly, and the jury found in favor of the conductor and against the company. The appellate court held the verdict

bad because the death was caused by the sole act of the con-
ductor, and if he was not guilty, his principal could not be
guilty. Likewise in *Indiana N. & T. Co.* v. *Lippencott,* 75
N. E. (Ind.) 649, the action was brought for damages against
the master (Ind. N. & T. Co.) and Stephen A. Clarke, its
servant, to recover damages alleged to have been caused by
Clarke, the servant, an employee, in "shooting" a well with
nitroglycerine. The verdict was against the master and silent
as to Clarke. The court set it aside on the ground that there
could be no negligence on the part of the master, if there was
none on the part of the servant. Reason upholds these de-
cisions. But if the master as well as the servant has been
negligent, and the injury received is not caused solely by the
servant, it is held that a verdict against the master alone will
be upheld. *Carson* v. *So. Ry. Co.,* 46 S. E. (S. C.) 525;
*Bedenbough* v. *So. Ry. Co.,* 48 S. E. (S. C.) 53; *Mining Co.* v.
*Robinson,* 150 Ky. 707, 150 S. W. 1000. It seems that Texas
has refused to adopt the rule laid down in the *South Carolina,
Washington and Indiana* cases above cited, in *Gulf, etc. R. R.
Co.* v. *James,* 73 Tex. 12; and Montana has done likewise in
*Verlinda* v. *Stone &c.,* 44 Mont. 223.

We do not think that Jarrett's alleged negligence in allow-
ing the boy to work was the sole cause of Tony Will's death.
It was unlawful for the Coal Company to employ this boy in
its mine at any service. It was unlawful for Jarrett to permit
him to work therein. Jarrett said he required an affidavit
from the father as to the age of the boy, and afterwards a
mine inspector required another affidavit, and it may be that
the jury considered that Jarrett was excusable, having at-
tempted to do what he thought was sufficient in that regard,
but that the Company was not excused from the peremptory
requirement of the statute which says that no child under
the age of 16 years shall be employed or permitted to work in
any mine. It was the duty of the Company to see that no
child under the prohibited age worked in its mine, and it
could not escape that duty by delegating its performance to
one of its employees. The superintendent knew the boy was
working. He was at work when the mine was taken over by
defendant Company. The Company was charged with knowl-

edge of his unlawful employment. If the injury is the result of concurrent negligence on the part of the employer and his servant, the injured party may recover against both or either. *Wade* v. *McLean Contr. Co.*, 149 N. C. 177. See Anno. Cas. 1915 C, p. 187, and note. Moreover, we do not find that any objection was made to the verdict when it was returned, and generally a failure to object to an informality in a verdict before the jury is discharged is a waiver of the defect. See *Carrico* v. *Ry. Co.*, 39 W. Va. 86.

Verdicts must be construed liberally, and the jury would have been warranted in finding that the unlawful employment of the boy was the proximate cause of the injury. Where a child under the statutory age of employment is injured while unlawfully employed, a prima facie case of negligence is established. *Norman* v. *Coal Co.*, 68 W. Va. 405; *Daniel* v. *Coal & Coke Co.*, 68 W. Va. 490; *Mangus* v. *Coal Co.*, 87 W. Va. 718; *Bobbs* v. *Press Co.*, 89 W. Va. 206. We find nothing in the defense (if the boy's age was not 16 years) which rebuts the prima facie case of negligence, except that he was of such intelligence, experience and precociousness as to take him out of the class of children prohibited by the statute from being employed, and therefore was capable of contributory negligence. The jury found against that defense under the special interrogatory.

Nor can it be said that the jury has found that the employment of the boy as a snapper was not the natural, probable and anticipated cause of his injury and death. The second interrogatory contained two questions and required a yes or no answer. It was misleading and confusing. It was stated as follows: "In the event the jury should answer the above question (question No. 1 requiring them to answer if Tony was 16 years of age) 'No', then the jury should answer this question: Was the unlawful employment of Tony Wills to work as a 'snapper' or brakeman in the coal mine of Montfair Gas Coal Co., both acquiesced in, or consented to, either expressly or impliedly, by John Wills, the father, and the natural, probable and anticipated cause of the injuries and death of Tony Wills? Answer (Yes or No) ''. The answer was "No". The jury could have answered "No" to the ques-

tion of consent of the father, and "Yes" to the question of
the unlawful employment being the natural, probable and an-
ticipated cause of the death, or vice versa; or it could have
answered "No" or "Yes" to both questions.   That it has
answered "No" does not necessarily imply that the jury
found the unlawful employment was not the natural, antici-
pated and probable cause. The interrogatory was propounded
as a single question to be answered by "Yes" or "No". The
third interrogatory refers to the second as a single question.
This special finding is not irreconcilably in conflict with the
verdict, based as it might have been, and probably was based,
upon a conclusion that the verdict was against defendant Coal
Company because of the employment of a boy under 16 years
in a coal mine.  Responses to special interrogatories to be in-
consistent with a verdict must exclude every conclusion not in
accord with the verdict.  *Anania* v. *Ry. Co.*, 77 W. Va. 105,
87 S. E. 167, L. R. A. 1916 C 439.  We cannot say that the
verdict is based solely upon the alleged negligence of Jarrett,
the mine foreman, and therefore, being silent as to him auto-
matically acquits the Coal Company.

As before observed, the liability of defendants is based on
the unlawful employment and consequent injury; that while
the father did consent to the employment of his son as trapper,
he did not consent to the transfer to snapper, and is not pro-
hibited from recovery as contributing to the injuries, being
sole distributee of the boy's estate; that defendants failed to
provide a safe place to work and reasonable rules by which
to work; and the employment of an incompetent and unskilled
motorman through whose negligence the injuries and death
occurred.   The defenses were that Tony was 16 years of age;
that the father consented to the employment as snapper; that
Tony, if under the prohibited age of employment, was preco-
cious and experienced and removed from the class of boys pro-
hibited from employment under the statute, and was therefore
guilty of contributory negligence; and that defendants were
not guilty as charged.   The jury found that the boy was
under sixteen; that he was not precocious to the degree of
taking him out of the inhibition of the statute; that the father
did not consent to the employment as snapper; and that de-

fendant Coal Company was liable. The special interroga-
tories were designed to require the jury to deliberately ex-
amine, patiently consider, and definitely find *controlling facts*
so that the very right of the case could be reached. Having
found these controlling facts as they did, the liability of the
defendant flowed therefrom and called for a verdict in plain-
tiff's favor. If Tony was 16 years of age or over, or of such
intelligence and experience as to preclude recovery because
of contributory negligence, it was of little moment whether
the motorman was inexperienced and reckless, for defendant
was protected under the Workmen's Compensation Act, un-
less it wantonly and willfully caused the death; and there is
no evidence that the death was willful or designed on the part
of defendants. On the other hand, if Tony was under the
·prohibited age, was not precocious, and the father did not con-
sent, expressly or impliedly (controlling facts found by the
jury), it was of little moment or importance whether the
motorman was inexperienced or acted recklessly, for under
the statute prima facie negligence was shown, and it was not
attempted to be rebutted by defendants. Defendant's evi-
dence of the injury shows that the boy did not appreciate the
danger of riding on the bumper, and refused to obey the in-
junctions and warnings, a situation which the statute was de-
signed to prevent. It confirmed instead of rebutted the prima
facie case. The purpose of the statute is to preserve life, pre-
vent children from being subjected to danger which they
cannot appreciate, and save them from injury through childish
curiosity, indiscretion, heedlessness, and negligence. Our de-
cisions referred to hold that the unlawful employment is prima
facie the proximate cause of the injuries thus received. Where-
fore, we are not much impressed with the efforts of plaintiff
to show incompetency and recklessness on the part of the
motorman, or the effort of defendants to prove his competency
and lack of carelessness. We may observe, in this connection,
that while there is some evidence that the motor was operated
at a speed of from 15 to 18 miles per hour on the occasion of
the death, there is other evidence that the motor was so geared
that it could not travel faster than 10 miles per hour with a
load of five cars. It was pushing one empty car at the time

of the accident, the track was level, in good repair, and on practically an even grade. It was also shown that derailments of cars and motors in the mines are of frequent occurrence, brought about by innumerable causes, such as a lump of coal on the track, and were of ordinary occurrence in this and other mines. It is one of the common, usual and anticipated dangers. Neither the track nor motor was out of repair.

The charge in the declaration that the motorman, Sam Folio, was incompetent, and operated the motor recklessly and at a dangerous speed has some support in plaintiff's evidence. He had a short while before been promoted from snapper to motorman, and another workman had refused to work with him because he was afraid of the way he operated the motor. Complaints had been made to the officers of the Company in charge of the operation, by some of the workmen. On the other hand, defendants produced evidence that Sam was competent, and could not have driven the motor at an excessive and dangerous speed.

The alleged negligence of the motorman as the proximate cause was relied upon to meet a possible finding by the jury that the father had consented to the employment as a snapper; for even though the parent consents, he is not precluded from recovery if the injuries are not the direct and proximate result of the unlawful employment, but are proximately caused by some act of negligence of the master, such as failure to provide a safe place to work. *Irvine* v. *Tanning Co.*, 97 W. Va. 388. Instructions were given the jury to the effect that even though they should find that John Wills, the father, consented to his son's employment as a snapper, he was not barred from recovery unless they found that the unlawful employment was the proximate cause; but if they found that the death was caused proximately by defendants' failure to furnish a reasonably safe place to work, or reasonably safe appliances, or by employing a reckless or incompetent motorman, then the defendant Company was liable, unless they further found that the boy was possessed of such wisdom, experience and sagacity as to take him out of the class of boys under 16 years of age, and was guilty of contributory negligence. These instructions are criticized, and justly so, for there was no evi-

dence of an unsafe place to work.  It was reasonably safe for
a mining operation.  Nor was there any evidence that the ap-
pliances were not reasonably safe.  An instruction should not
be given where there is no appreciable evidence to support it.
They are also criticized because they do not tell the jury
that defendant employed an incompetent motorman knowing
him to be such.  But what harm was done by them?  They
only applied to meet a possible finding that the father con-
sented to the employment as snapper, and the jury has found
that he did not consent.  The jury found a fact which took
from it any necessity of considering these instructions.  They
were harmless inasmuch as the principle they sought to apply
had no application, when the jury found the father did not
consent to the employment.  That finding, coupled with the
finding as to age, impelled a verdict.

It is argued that the father is precluded from recovery as
a conclusion of law because he consented to the employment
of his son in the mine as a trapper, and the principle is in-
voked that where the facts are undisputed and a clear case
of contributory negligence is shown, the court must instruct
for defendant, as enunciated in *Slaughter* v. *Huntington,* 64
W. Va. 237; *Shriver* v. *County Court,* 66 W. Va. 685,
and *Krodel* v. *Ry. Co.,* 99 W. Va. 376.  The theory upon
which a parent is precluded from recovery where he con-
sents to such unlawful employment (being sole distributee),
is that he is guilty of contributory negligence barring re-
covery in thus giving consent.  While the father did con-
sent to employment of his son as trapper, he did not con-
sent to his employment as snapper, but, on the contrary,
strenuously protested against it.  It appears that the position
of trapper is comparatively safe to that of snapper, the latter
being very dangerous.  The initial negligence in the employ-
ment coupled with the later negligence of the mine foreman
in placing the boy in a dangerous position in which he was
killed by one of the usual and common accidents incident to
that dangerous employment, relieved the father from the
negligence which proximately caused the death.  The danger-
ous employment brought about the death, and not the em-
ployment to which the father consented.  The father's negli-
gence in permitting the boy to be employed as a trapper was

remote and incidental, and did not proximately contribute to the injury. It is quite generally held that where the parent consents to the employment of his minor child to perform a particular kind of work the employer is liable to the parent for injuries sustained by the child in the performance of another and more dangerous kind of work required by the employer. *Haynie* v. *Power Co.*, 157 N. C. 503, 73 S. E. 198, 37 L. R. A. (N. S.) 580, Ann. Cas. 1913C, 232; *Marbury Lumber Co.* v. *Westbrook*, 121 Ala. 179, 25 So. 914, and cases there cited; 29 Cyc. p. 1640, par. 6, citing *Gulf etc. Ry Co.* v. *Redeker*, 67 Tex. 190, 60 Am. Rep. 20. In *Powhatan Lime Company* v. *Affleck's Admr.*, 115 Va. 643, it was held that where the father had consented to the employment of his minor son in a non-dangerous department of the employer's plant only, and the minor was afterwards transferred to dangerous duties in the performance of which he was killed, it was negligence on the part of the employer to expose the boy to dangers different from those incident to the contract of employment. In accord is *Satchell* v. *McNair*, 189 N. C. 472 (1925), 127 S. E. 417. Where the father had been informed that his minor son was in the employment of a coal company and made no protest, we held that it would not be presumed that he knew the boy was actually in the mine at a dangerous work, and that a verdict relieving the father of contributory negligence, as upon implied consent, would not be disturbed. *Waldron* v. *Coal Co.*, 89 W. Va. 426. Defendants gave an instruction to the effect that if the jury believed the boy to have been under 16 years, and that the father consented to his employment as snapper, and that the death was the natural, probable and anticipated consequence of the unlawful employment as snapper, then the verdict should be for defendant. The question of contributory negligence of the father was placed squarely before the jury; and we cannot say as a matter of law that the consent to the employment as trapper constituted contributory negligence on the part of the father. It was not error to refuse defendant's instruction No. 19 which would have told the jury that the father, by consenting to the employment as trapper was guilty of such contributory negligence as would impel a verdict for defend-

ants.  In holding the declaration good upon demurrer, when certified to us, in 97 W. Va. 476, we held that the second count was good because it alleged that the transfer of the boy from trapper to snapper, coupled with the negligence of defendant in knowingly employing an incompetent motorman whose negligence in operating the motor proximately caused the injury, we did not pass upon the question whether the consent of the father to the employment as trapper prevented recovery.  It was unnecessary to do so, for the gravamen of that count was the negligence of the incompetent motorman. That was sufficient to sustain the count on demurrer.  The fact that a father who consents to the unlawful employment of his minor son in a coal mine, has violated the law and is subject to penalties, does not prevent recovery where the death is not the natural, probable and anticipated result of his consent.

Was error committed in arriving at the findings of fact which controlled the verdict?  The first controlling fact was raised under defendant's special plea No. 1 and propounded by special interrogatory No. 1.  Was Tony over or under 16 years of age at the time of his death?  Error in the ascertainment of this fact is alleged because the court allowed plaintiff to introduce witnesses in rebuttal who stated that while they did not know his age in years, he was of small stature, of mediocre intelligence, not precocious, and had the appearance and demeanor of a boy less than 16 years of age.  It is argued that this evidence was evidence in chief and should not have been admitted on rebuttal.  Defendants had introduced evidence of the boy's age as gathered from alleged affidavits and statements of the father, coupled with the general appearance of the boy and his mental capacity to comprehend instruction as to danger, in short, evidence to take him out of the class of boys who are prohibited from employment in coal mines.  The evidence complained of was to rebut, and may have trenched upon evidence which would have been proper in chief.  Defendant could have met this evidence after it was introduced if it saw fit, but did not do so.  The order of introducing testimony is largely in the discretion of the trial court, and a verdict will not generally be disturbed unless it clearly ap-

pears that prejudice has resulted therefrom.    *State* v.
*Williams,* 49 W. Va. 220.  Even where evidence was not ad-
missible at the time of introduction, if subsequent develop-
ments make it admissible a verdict will not be disturbed be-
cause of such premature introduction.    *Goodwin* v. *Tony
Pocahontas Coal Co.,* 88 W. Va. 40.

Another point of error is that when plaintiff was examined
as a witness he was allowed to place in evidence a receipted
bill for funeral expenses of the deceased boy, in favor of
Harmer & Son, amounting to $225.50, over the objection and
exception of defendants.  Plaintiff had told of an effort on
the part of Holt, defendant Company's superintendent, to
have him sign a paper making application for compensation
out of the Workmen's Compensation Fund, in which paper
was contained the statement that the boy was 18 years of age
at the time of death, which paper the witness refused to sign
on account of the statement of age therein.  The paper, not
signed, was filed in support of his evidence.  He said that
Holt in that connection furnished him another paper, being a
bill made out by Harmer & Son, Undertakers, against the Com-
pensation Fund for funeral expenses to be certified to by him
to the effect that the services had been rendered and not paid
for.  This paper the witness refused to sign, and tendered it
in evidence, stating that he had paid the funeral expenses
himself.  He had theretofore testified that the boy was killed,
and that he had buried him at Shinnston, Harmer & Son acting
as undertakers, whom he paid.  As evidence of the payment
to them he offered the receipted bill from them, the introduc-
tion of which is the error complained of.  Defendants say the
receipted bill has no place in the case because it was not an
element of damage and had no bearing upon any issue.  Plain-
tiff's counsel would sustain its introduction on the theory that
it was a part of the history of the case.  The declaration does
not ask for special damages.  Any sum recovered for the negli-
gence is not subject to the debts of the deceased, and the
father was personally liable, the son being a minor.  The
purpose of the evidence is not clear, except to buttress plain-
tiff's statement that he had buried Tony and had paid the
funeral expenses, and had not made application for payment

to the Compensation Commissioner. No instructions were based on funeral expenses. It had little if any probative value. While it would have been better to have rejected it, we cannot see that its introduction was prejudicial.

Other errors assigned relate to evidence admitted and instructions given upon the incompetency of the motorman and his alleged negligence in the operation of the motor. In view of the special findings, we deem this phase of the case of little importance; for if Tony was not 16 years old, nor of such intelligence and precocity as to remove him from the class of children protected by the statute; and if the father did not consent to his employment as snapper, all as found by the jury, defendant was liable irrespective of the alleged negligence in the employment of an incompetent motorman and his negligence and carelessness in operating the motor.

The judgment is affirmed.

*Affirmed.*