LEVITT ET AL., APPELLANTS, *v.* CITY OF CLEVELAND, BOARD OF BUILDING STANDARDS, APPELLEE.

(Nos. 878138, 874477, 874517, 874518, 874653, 874807, 874810, 874811, 874812, 874813, 874814 and 878332— Decided February 18, 1970.)

Mr. *Milton Schulman,* for appellants.
Mr. *Clarence L. James, Jr.,* director of law, and *Mr. Robert I. Zashin,* for appellee.

MCMONAGLE, J.   The above listed twelve cases were assigned to this court for disposition.   Each was filed herein as a separate appeal from a decision of the Board of Building Standards of the city of Cleveland, Ohio.   Oral hearings on each was conducted by this court.

During the oral hearings it came to the attention of the court that the structure which was the subject of the appeal in case No. 874517, William H. Kahan, appellant, no longer existed and the appeal was dismissed by the court

since the matter was moot; in case No. 874518, Milo Realty Company, the city of Cleveland had bought the property and this appeal was dismissed by the appellant.

The opinion of the court is therefore chiefly concerned with the balance of the above specified cases.

A portion of what follows pertains to one or more of the actions; and will not pertain to others. It is not to be considered that everything contained herein pertains in toto to each case.

These cases come to this court by virtue of provisions of Chapter 2506, Revised Code, captioned "Appeals from Orders of Administrative Officers and Agencies" and also by virtue of Chapter 11, Section 76-6 of the charter of the city of Cleveland, which creates the Board of Building Standards, as a board of appeal, and specifies its jurisdiction (d) including the power

"To hear and decide appeals from, * * * any order, requirment, decision or determination of the Commissioner of Building and Housing * * * relating to the * * * repair, equipment, use or occupancy, maintenance, removal or demolition, of any building or other structure, or any appurtance connected or attached to such buildings or structures, regulated by the building code of the city of Cleveland, by reversing or affirming in whole or in part, or modifying such order, requirement, decision or determination * * * as in its opinion ought to be made in the premises, and to that end shall have the power of the officer or agency relative to whose ruling the action is taken, except that matters relating to zoning shall not come within the province or jurisdiction of this board.

"* * *

"To establish rules and regulations for its own procedure not inconsistent with this section." Eff. November 21, 1967.

Section 5.0717 of the Codified Ordinances of the City of Cleveland is concerned with the procedure for appeal to to the Board of Building Standards and Building Appeals. Subsection (e) states in part:

"1. An appeal may be made by any person ag-

grieved, or, by the head of any department or division of the city.

"2. Such appeal shall be made within thirty days after the decision from which appeal is taken is rendered, by filing with the officer or agency from whose decision the appeal is taken, and with the board, a notice of appeal specifying the grounds thereof; * * *."

Attached as exhibit "A" is a copy of Rule 54 of the City of Cleveland, Board of Building Standards, with reference to an appeal.

The statutes, the applicable provisions of the charter and ordinances of the city of Cleveland and the rule of the Board of Building Standards of the city of Cleveland are reasonable and conform to all constitutional safeguards.

In each of the appeals to the board which were submitted for decision by the court, Milt Schulman is the appellant, except in case No. 878138 where Dr. Harry Levitt is appellant, and case No. 874813 which shows appellant Milt Schulman, agent for Larry Ettkin.

Exhibit "B" is a photostat of the appeal to the Board of Building Standards filed in case No. 878332, which is identical with that filed in each of the other cases (No. 874138, Levitt, excepted), except for the date, name of the owner and address of the premises. A paper, captioned "Reason for Appeal," is attached to each containing the following words:

"This Appeal is filed because the order of the Housing Commissioner is arbitrary, capricious, discriminatory, unreasonable and has no basis in law or fact."

Following are examples of some of the items which were ordered corrected and which orders were purportedly appealed from in the manner above indicated:

*Case No. 874813—Martin Estreicher*

"There is a missing flue cap (first floor), kitchen).

"The front fence is not maintained in good repair.

"The structure is not equipped with gutters and downspouts connected to a proper sewer (south side).

"This structure is infested by vermin.

"Frayed and spliced wiring in fixtures (bedroom).

"Open wiring fastened to woodwork (basement)."

*Case No. 874807—Larry Ettkin*

"No safety valves on space heaters Apt. Nos. 6, 5, 1.

"The cellar window panes are broken."

*Case No. 874811—Joseph Fader*

"Cords fastened to woodwork. (Cellar; No. 5 kitchen.)

"Frayed and spliced wiring in fixtures.

"No service ground.

"Replace trap on kitchen sink in Suite No. 4 (1008), Suite No. 8 (1012).

"Repair water closets in Suites No. 6 (1008), 3-5-7 (1018).

"Replace defective water pipe (Basement 1018)."

The above are samples of orders of the building or housing commissioner which were the subject of the so-called appeals to the Board of Building Standards and Building Appeals on the ground that the orders to correct these items were "arbitrary, capricious, discriminatory, unreasonable, etc."

The action of the board sustaining the commissioner in each was then appealed to the Common Pleas Court of Cuyahoga County, Ohio.

The administrative appeals in what are now Common Pleas cases No. 874813, No. 874814 and No. 874812 had been scheduled for hearing by the board on several occasions, were continued at the request of Mr. Schulman, and were finally set for March 31, 1969, and notice duly given that no more continuances would be granted. Mr. Schulman did not appear on March 31, 1969, and neither did any property owners; the hour of the meeting was delayed because of the death of General Eisenhower and Mr. Schulman was contacted by phone at his office and advised that the meeting was in session and he did not appear. Proceedings were then had sustaining the action of the commissioner.

As previously indicated, when called for hearing in this court, case No. 874518, Milo Realty Company, was dismissed by the appellant at his costs; case No. 874517, Kahan, was dismissed by the court when it was determined

that the structure involved no longer existed and the matter was moot.

Case No. 874653, Bess Hirsch, was heard by the board on April 7, 1969 after notice of hearing was duly given, no continuance was requested, and neither the owner nor his counsel appeared.

Case No. 874477, Bell et al., and case No. 874811, Fader, were heard by the board on April 21, 1969, when Mr. Schulman was present.

Case No. 878138, Levitt, was heard by the board on August 25, 1969, when Dr. Levitt was present and testified under oath. Following is a portion of what transpired:

"Chairman Carbone: Dr. Levitt, in your letter of appeal in May you indicated where you were requesting 60 days extension of time. The 60 days have elapsed. I want to know what you are proposing to do.

"Mr. Levitt: I am in a quandry as to what to do. There are two things being in consideration. The property is being considered for a purchase for a school. In fact, I have had meetings with them last week, and there is a very possible chance that things may develop very soon. Just how soon it is hard to say.

"If it wasn't a fact that they wanted to do that *I would be only too glad to remove the structure as it would be for the best interest of the area,* but to fix it up at the moment would seem a waste of return.

"Chairman Carbone: This building as we understand it is open.

"Mr. Levitt: May I just explain this to you?

"The windows, there are small windows. In other words, a person can't go through the windows. There is steel framework. But the windows were broken during the fire and to replace the windows would be, I think, a waste because I don't believe there is any danger.

"The door that I wanted to put up, now, we have the lumber there and the carpenter was there to put up the door to block it off from any vehicles going in there, you see, but there were a couple of times when the carpenters were approached by someone and told that they had better

not go in there for their own interest and they left. Now, the lumber is still there to do that, but three times they were informed they had better not do it. Just who this was I don't know. They refused to go ahead. They didn't want to jeopardize their own person, you see.

*"Now, whatever you think I should do I will try to comply with."*

"* * *

"Mr. Levitt: How do I stand at the moment?

"Chairman Carbone: The order is that the commissioner's orders be affirmed and that the building will be demolished.

"Mr. Levitt: You mean I can't get any time on that at all?

"Chairman Carbone: Well, you requested 60 days, sir.

"Mr. Levitt: Yes, I did.

"Chairman Carbone: The 60 days have long since passed.

"Mr. Levitt: I did do that.

"Chairman Carbone: I think that the city has been very, very lenient with you.

"Mr. Levitt: *I grant you that.*" (Emphasis added.)

The court finds that the decision of the Board of Building Standards should be affirmed in case No. 874138, Levitt.

Counsel for appellant concedes that the action of the board should be affirmed in case No. 874477, Bell, etc., and it is so ordered.

Counsel for appellants contend that the other eight cases should be reversed for one or more of the following reasons:

1. The board should not have proceeded with the hearings of March 31, April 7, and May 5, for the reason that counsel was engaged in a court whose proceedings took precedence over those of the Board of Building Standards and Appeals even though in one case, No. 874653, the Hirsch case, a continuance was not even requested.

If counsel is actually engaged in a court trial it is not to be expected that such case would be interrupted or sus-

pended because counsel has a matter scheduled before an administrative body.

However, all courts attempt to cooperate with counsel so that, insofar as it is practicable, matters will not be scheduled that will interfere with previously scheduled administrative hearings, particularly since courts are in session continuously and some administrative bodies, such as the Board of Building Standards and Appeals meets once a week. This court does not know of any judge, who, if requested in advance, would not cooperate with counsel so that he could appear at a previously scheduled administrative hearing.

If counsel has previously scheduled administrative hearings, particularly where there had been five previous continuances, he should notify opposing counsel in the administrative matters of the possible court conflict and all counsel should confer with the court with reference to a time that will permit counsel's attendance at both matters.

It is well established that the general rule in regard to an application for a continuance to an administrative agency is the same as that which applies in judicial procedure. The granting or refusal of a continuance is a matter within the sound discretion of the agency, and its decision will not be reversed unless such discretion is abused. *Holt* v. *State* (1860), 11 Ohio St. 691; *State, ex rel. Buck,* v. *McCabe* (1943), 140 Ohio St. 535; *Akron* v. *Public Utilities Commission* (1966), 5 Ohio St. 2d 237.

In *Lupo* v. *Reisner* (1927), 5 Ohio Law Abs. 650, the court held that the denial of continuances on the ground that counsel had been engaged in trial of other cases and was not prepared to try the case was not an abuse of discretion requiring reversal.

These propositions of law are sound, reasonable and applicable in all proper factual situations.

The above observations are made for the purpose of affording some guidelines for counsel. However, there is no evidence in the cases now being decided where it is contended that counsel were actually engaged in other

courts so that a conflict existed between any administrative hearings herein involved and a court hearing.

In the cases that were scheduled for hearing on March 31, 1969 and were heard on that day, counsel, by his own testimony, was not engaged in trial in any court. In the Hirsch case, counsel was duly notified that the approximate time of hearing would be 11:40 a. m. on April 7, 1969; a continuance was not requested; and although the Hirsch evidence indicates that counsel was engaged in federal court earlier that morning the same evidence shows that his engagement had been concluded well in advance of the time scheduled for the board hearing.

The court finds that it was proper for the board to proceed, as it did, with the scheduled hearings in cases Nos. 874813, 874807, 874814 (No. 874518 has been dismissed by appellant), 874810, 874812, and that its actions in so doing did not constitute an abuse of its discretion.

2. Another reason contended by counsel for appellants as to why one or more of the actions should be reversed and/or that the motion of the appellee for dismissal of the appeal or affirmation of it should be denied is that the transcript of the hearing before the board, in some cases, does not indicate that testimony was there given under oath as to each of the violations charged by the building or housing commissioner. (Section 2506.03, Revised Code.)

If counsel is present at an administrative hearing and fails to object to any testimony which is not being given under oath, he waives his right to thereafter, in a court appeal, assert this as a basis for claiming such testimony should not have been considered by the board or thereafter by a court. Counsel cannot simply remain silent and complain if the result is adverse to his client. In the case of *Title Guarantee & Tr. Co.* v. *Wilby,* 78 Ohio App. 183 at page 191, it states, in pertinent part:

"* * * 'It has been held by other courts, as well as our own, that where an oath is requisite to qualify a person as a trier of the facts or of law, it may be waived by the competent parties in interest, either expressly (*Howard* v. *Sexton,* 4 N. Y. 157; *Tucker* v. *Allen,* 47 Mo. 488; *Grant* v.

*Holmes,* 75 Mo. 109), or by going forward in the matter without inquiry or objection. *Arnold* v. *Arnold,* 20 Iowa 275; *Merrill* v. *St. Louis,* 83 Mo. 244; *Cochran* v. *Bartle,* 91 Mo. 636, 8 West. Rep. 707.' See also *Associated Employers' Reciprocal* v. *Indus. Comm.,* 88 Okla. 249, 251, 212 P. 604; *State* v. *Williams,* 49 W. Va. 220, 222, 38 S. E. 495; *Ogden* v. *State* (Tex.), 58 S. W. 1018, 1021.''

If neither counsel or client attend a hearing scheduled as a result of an appeal filed by them there is no requirement that the Board of Building Standards hear any testimony with respect to any order pertaining to building or housing violations—even an order which had validly been appealed from. The board has the right to assume where an appeal is not prosecuted that the order has been complied with or the appeal is abandoned. If the appeal is not prosecuted, the board should, *sua sponte,* affirm the order and dismiss the appeal. The law certainly does not require the board, any more so than it requires a court, to whom a matter has been appealed, to go forward with a hearing when the appeal has been abandoned.

Also a board is only required to proceed with a hearing as to those matters that have been properly appealed to it.

The ordinance and rule requirements, above cited, are reasonable  The requirement that an appeal specify the grounds thereof and contain a statement of the principal reasons on which the appeal is based means that, when an order contains more than one item, the item or items appealed from be specified and facts be stated as to why the specific item or items, which are a subject of the commissioner's order, should be reversed or modified. The hearing before the board is for the purpose of determining such issues as are properly called to its attention. If facts, bearing upon such issues are in dispute, such facts are to be determined by the board from testimony given under oath.

A board is not required to take testimony as to any items where a statement containing the factual reasons for requesting a review and reversal, or modification, of a commissioner's order, are not specified in the appeal.

The appellant in case No. 874813 (Estreicher), case No. 874814 (Estreicher), case No. 874810 (Moss), case No. 874812 (Estreicher), case No. 874653 (Hirsch), case No. 874811 (Fader) is "Milt Schulman." No *person aggrieved* by the order of the commissioner filed an appeal. A "person aggrieved" by a building repair order could be an owner, lessee or mortgagee. No one has standing to appeal a building repair except the person aggrieved, which means a real party in interest.

In case No. 874807, the appellant is shown as "Milt Schulman agent for Larry Ettkin." Mr. Ettkin is also shown as the owner.

No letter from an owner authorizing an appeal was submitted.

Information with reference to occupancy is not included. Stamped on each appeal is the following:

"Information to be furnished at hearing."

No factual statement specifying the reasons why a reversal or modification is requested is contained in or attached to any appeal. A paper containing wordage which merely constitutes a conclusion without any statement of facts, and which does not specify or advise any one of the basis or reason for an appeal, is attached to appeals. Following are the words:

"This appeal is filed because the order of the Housing Commissioner is arbitrary, capricious, discriminatory, unreasonable and has no basis in law or fact."

A statement such as this is meaningless. It does not satisfy the ordinance and rule requirement. It does not put anything at issue.

These words appear to be an effort to frustrate the reasonable appeal requirement that a statement be filed specifying reasons why an order should be reversed or modified.

Appeals should be liberally construed so as to effectuate an appeal. *Van Meter* v. *Segal-Schadel,* 5 Ohio St. 2d 185.

When nothing is actually submitted from which it can be determined what order is appealed from and specified

reasons are not given, there is nothing for the Board of Building Standards and Appeals to consider or decide.

When words such as above quoted constitute the only basis submitted for an appeal there are no valid issues made up that require any hearing by the Board of Building Standards and Building Appeals. If nothing more than these words can be submitted it is apparent that the appellant realizes that there is no valid reason for an appeal, that the findings of the commissioner are correct and the so-called appeals were filed for the purposes of delay.

Case No. 878322, Erna Rosenberg, was partially heard on January 19, 1970 and was then continued at the request of counsel for the defendant. It was set for final disposition on January 26, 1970. On January 26, 1970, counsel again requested a continuance which was refused. Counsel then urged the court that the decision of the Board of Building Standards and Building Appeals entered on May 5, 1969, should be reversed because the transcript did not indicate that testimony was given on that day under oath and that the board should not have proceeded with a hearing in the absence of counsel for the appellant who was then engaged in a trial in federal court.

This case is a classic example of what can only be referred to as a sham and frivolous appeal that has contributed to the congestion of the Cuyahoga County Common Pleas Court docket.

The City of Cleveland Housing and Building Commissioner under dates of January 14, 1969 and January 20, 1969, duly notified the owner of a total of 27 separate violations that existed on the subject property and advised them that they should be corrected within 30 days.

On February 12, 1969, an appeal form was filed.

It is obvious from it that no appeal was taken by a "person aggrieved;" the portion pertaining to Occupany of Premises has stamped on it by a rubber stamp "information to be furnished at hearing;" no statement specifying the grounds for the appeal was included; these words were attached on a separate paper:

"Reason for Appeal.

"This appeal is filed because the order of the Housing Commissioner is arbitrary, capricious, discriminatory, unreasonable and has no basis in law or fact.";
no drawing or sketches were attached; and there was no letter from an owner authorizing an appeal.

At the board hearing of April 7, 1969, it was discovered that Milt Schulman had filed two appeals, one showing Robert E. Jaffe, as owner; another showing Max and Erna Rosenberg, as owners and that no one appeared for hearing. The matter was then continued.

The next hearing was on April 21, 1969, when the only appearance by anyone in behalf of any owner was Mr. Schulman. At that time the record indicated that the owners were Max and Erna Rosenberg and Mr. Schulman was asked why he had not submitted the required data for an appeal. He responded:

(R 8) "Mr. Schulman: No. The attorney for the appellant has determined that that information is not necessary for the board to properly hear this appeal. Therefore, I am not submitting it."

(R. 10) "Mr. Zashin: * * *

"I wonder if Mr. Schulman would be so kind to tell this board why the inspection is arbitrary, capricious, discriminatory, unreasonable."

Following are portions of the response:

"Mr. Schulman: Well, Mr. Zashin is an attorney. I don't know whether he has had enough time here and enough experience with a 50-year-old building to know whether they are in good repair or not. The building is in good shape. It doesn't look like the Greek construction of the Alhambra across the street from it, but for a 50-year-old building it is in very good shape.

"Mr. Zashin: Mr. Schuman didn't answer about arbitrary.

"Mr. Schulman: I don't know what you are talking about, internal sash cords missing in apartment 2 and 3. How many rooms? Where would that effect the health and welfare of the tenants? You can still open the windows.

"The shutoff valves were replaced. There were shut-

off valves put on the kitchen stoves as far as I was informed.

"The cracks and holes that they are talking about, all buildings have cracks and small holes.

"I doubt whether you saw any broken windows there. They are not broken windows that are designated in the report. In that neighborhood windows are broken and rebroken all the time.

"Now we can start at the beginning.

"The lower exterior trim on the north side is in need of repair. I don't know in what need of repair it is in. It looks all right to me. It could use a little paint. I don't think this involves anything that affects the health and welfare of the tenants.

"The front steps are in need of pointing. You always have a little cement missing in between the bricks, but that doesn't mean the building is going to fall apart.

"Broken basement window in the rear. That was fixed. If it is broken again it has happened since.

"Broken windows in the dining room and the kitchen door. I don't know what door they are talking about. It doesn't say what suite or where, but Mr. Estreicher keeps up with the breakage of windows because the heat is furnished to those tenants, and it is in the interest of the owner to see that the elements don't come inside.

"Sash cords missing in apartments 2 and 3. That isn't going to hurt anybody. It is part of maintenance. In my opinion it should never hurt anyone. It should not be a part of the violation notice under 6.0513.

"Windows are not weathertight in apartment 5. I doubt whether the inspector knows what he is talking about.

"Interior walls contain large cracks or holes, front stairway hall to third floor dining room, apartment 4. Now, if he sees a crack in the plaster, that wouldn't affect anybody.

"Side porch railings are deteriorated in apartments 5 and 3. To this extent that wouldn't affect adversely the health or safety of the people.

"The interior floors are weak and broken. That is

68

designated for apartment 4. They may squeak a little bit, but they are not weak or broken.

"Lock is broken on kitchen door of apartment 5. That happens with tenants and they are usually replaced.

"So to answer Mr. Zashin's question, this is a prime example of being arbitrary, capricious, discriminatory and unreasonable." (R. 10-11-12-13.)

"Chairman Carbone: Again, since the board was not offered the opportunity of making the interior inspection to determine the extent of these violations, the chair will request again of you whether a member of the board and a staff member, along with yourself and the owner, can make an inspection of this property, an interior inspection of the property." (R. 16-17.)

The hearing was again postponed.

The matter was again called for hearing on April 28, 1969.

It appears that Mr. Schulman had previously advised the secretary of the board that he was going to refuse to permit a joint inspection of the premises.

"Mr. Schulman: I would like to meet with the board and examine that property. I told Mr. Fransen I think Tuesday or Wednesday that I was going to refuse, but I would like to go over it with the board. So you set a date that doesn't interfere with my trial schedule.

"Chairman Carbone: Mr. Schulman, is tomorrow morning at 9:00 o'clock all right with you?

"Mr. Schulman: No, sir, not tomorrow morning. Not Wednesday. Thursday would be okay.

"Chairman Carbone: * * *

"Mr. Schulman: Thursday at 9:30 is good.

"Chairman Carbone: A motion in order to postpone Docket A-18-69 one week, and an inspection to be made by the board, the secretary and Mr. Schulman on Thursday, May 1 at 9:30.

"Mr. Schulman: What is that address?

"Secretary Fransen: 1458 East 86th St." (R. 4-5.)

Mr. Schulman subsequently testified in this court that although he and representatives of the board did go to the

premises that an inspection was not made; that although he was present the board representatives went into the wrong building and Mr. Schulman did not direct them into the correct building. Counsel for the appellee insists that the correct building was inspected.

The matter came on for a fourth hearing on May 5, 1969 and it is from the action of the board at that hearing that the appeal was filed to this court.

When this matter came on for hearing before this court on a second occasion, another continuance was then requested and refused.

It is the finding of the court that the so-called appeal in case No. 878332 from the orders of the Commissioner of Housing and Building to the Board of Building Standards and from the Board of Building Standards to this court was a sham and was taken only for the purposes of delay and it is the order of this court that the decision of the Board of Building Standards be affirmed.

The court further finds that the procedures followed and conclusions arrived at by the Board of Building Standards were in all respects valid in cases Nos. 874477, 874635, 874807, 874810 874811, 874812, 874813 and 874814; and that the so-called appeals from the orders of the commissioner were filed solely for the purpose of delay and were sham deeds.

The procedures that brought these matters to this Court of Common Pleas were merely extensions of the sham deeds that started the matters on the way to the Board of Building Standards and have placed added unwarranted burdens on a court that is already swamped with matters of substance and merit.

The motions of the appellants to reverse, are, in each case, overruled. The motions of the appellee to dismiss or affirm are sustained.

The motions filed by the appellee asking that the costs of the transcripts be taxed as costs herein are granted. See Section 2506.02, Revised Code.

*Judgment accordingly.*

*EXHIBIT "A"*
## CITY OF CLEVELAND
## BOARD OF BUILDING STANDARDS
## AND BUILDING APPEALS

## RULE OF THE BOARD
## NO. 54

BOARD OF BUILDING STANDARDS AND BUILDING APPEALS
Re: Notice of Appeal
Adopted: November 26, 1962
Effective: November 26, 1962

WHEREAS, the Board of Building Standards and Building Appeals is empowered by Section 76-6 (d) of the Charter of the City of Cleveland to establish rules and regulations for carrying into effect provisions of the Building Code and to provide means and methods of practice to effectuate such provisions, and

WHEREAS, the provisions of Section 5.0717 (e), "Procedure on Appeals," requires that "a notice of appeal specifying the grounds thereof" shall be filed with the enforcing officer or agency and the Board, and

WHEREAS, the filing of appeals effects the daily operation of the Board, and the staff thereof, the following rule is hereby adopted to obtain an equitable hearing and decision without unreasonable or unnecessary delay.

*THE RULE:*

Every appeal from the rulings of the officer or agency upon which the Board has authority to act shall be accepted by the Secretary, provided such appeal is filed within thirty days after the decision of said officer or agency, unless a shorter time be specified by the officer or agency because of a dangerous or unsafe condition.

Said appeal shall be on forms provided by the Board and the Appellant shall furnish all information requested on the form so that the Board may reach a proper, just and equitable decision.