NATHAN LEON DAVIS

*v.*

DARRELL CROSS, *et al.*

(No. 12705)

Submitted October 1, 1968.    Decided December 20, 1968.

No appearance for appellant.

*Hyer, Gibson & Talbott,* for appellees.

CAPLAN, JUDGE:

This is an appeal from the Circuit Court of Randolph County involving an action for damages resulting from a collision between a Honda motorcycle operated by the plaintiff and a municipal fire truck operated by the defendant. Upon the trial of this case motions for a directed verdict were made by the defendant after the plaintiff's evidence and at the conclusion of all the evidence. Both of these motions were overruled and the case went to the jury which returned a verdict for the plaintiff in the sum of $25,315.62. Upon the timely motion of the defendant for a judgment, pursuant to Rule 50 (b), Rules of Civil Procedure, the circuit court set aside the verdict and judgment and entered judgment for the defendant. It is from this final order that the plaintiff prosecutes this appeal. In the proceeding before this Court no appearance was made by the appellant after his appeal was granted, either by brief or by argument.

The collision which gave rise to this action occurred on May 17, 1964 at approximately 8 P.M. Nathan Leon Davis, the plaintiff, was operating a Honda motorcycle in a westerly direction on First Street in the City of Elkins. As he approached the intersection of First Street and Kerens Avenue, which extends from north to south, a fire truck, owned by the City of Elkins and being driven by the defendant Cross proceeded into the intersection from Kerens Avenue in a southerly direction and began to make a left turn on to First Street. At this time the fire truck was responding to a fire alarm and was manned by three men in addition to the defendant driver. The collision occurred in this intersection when the Honda struck the fire truck just behind the driver's door. As a result of this collision the plaintiff was severely injured.

Upon the institution of this suit the plaintiff complained that the defendant drove the fire truck in a negligent manner thereby causing the injuries for which damages are sought. This action was instituted against the defendant driver, the City of Elkins and the State Farm Automobile Insurance Company, the latter two being dismissed prior to the trial.

The plaintiff contends that the defendant was negligent in the operation of the fire truck in that he did not observe the stop sign on Kerens Avenue prior to making his turn on to First Street and that he was further negligent in the manner in which he made the turn. The defendant takes the position that the final action of the circuit court should be affirmed for the reason that there was insufficient evidence of negligence on the part of the defendant to support a verdict in favor of the plaintiff. Specifically, the defendant asserts that the degree of care required of a driver of an authorized emergency vehicle, while it is being operated in response to an emergency call, is the duty to exercise reasonable care and diligence under the circumstances of such emergency. The defendant cites Code, 1931, 17C-2-5, as amended, which provides that the driver of an authorized emergency vehicle when responding to an emergency call may disregard traffic regulations so long as he does so without reckless disregard for the safety of others and in the circumstances noted in such code provision. Also cited by the defendant is Code, 1931, 17C-9-5, as amended, which, in effect, provides that other vehicles shall yield the right of way and move from the path of any emergency vehicle upon the sounding by the latter of an audible signal and the exhibiting of a red light. The defendant furthermore asserts that even if he were guilty of negligence the plaintiff, by his negligence, contributed to his injuries and cannot recover.

The principal question involved on this appeal is whether, under the circumstances revealed by the record, there was sufficient evidence of negligence on the part of the defendant to warrant submission of the case to the jury. In making this determination, we must examine the acts

of the defendant at the time of the collision and consider the nature of the venture in which he was engaged at that time.

This is not the usual case of a collision between two ordinary vehicles. The defendant was the driver of an authorized emergency vehicle responding to an emergency call. Therefore, in determining whether the acts complained of constituted primary negligence, a different standard must be applied than that applied to the conventional driver. Pertinent to the decision of this case is the language of Code, 1931, 17C-2-5, as amended, which reads as follows:

> "(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
>
> (b) The driver of an authorized emergency vehicle may:
>
> (1) Park or stand, irrespective of the provisions of this chapter;
>
> (2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
>
> (3) Exceed the speed limits so long as he does not endanger life or property;
>
> (4) Disregard regulations governing direction of movement of turning in specified directions.
>
> (c) The exemptions herein granted to an authorized emergency vehicle shall apply only when the driver of any said vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

544

(d)   The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

The evidence adduced at the trial discloses that the defendant did not stop at the stop sign at the intersection of Kerens Avenue and First Street. However, it is undisputed that the fire truck entered the intersection slowly and with obvious regard for the safety of others. The plaintiff's witness, Mr. Dayton Lister, who observed the collision, testified, as to the speed of the fire truck at the time of the collision, that "It was going slowly." Were this a vehicle other than an authorized emergency vehicle responding to an emergency call, the failure of the driver to stop at a stop sign would constitute evidence of negligence. However, in determining whether this defendant was negligent in failing to observe the stop sign at the intersection of Kerens Avenue and First Street we must consider the provisions of the above quoted statute. Section 5 (b) (2) thereof provides that an emergency vehicle on an emergency call may proceed past a stop sign, "after slowing down as may be necessary for safe operation." As herein noted, the evidence is undisputed that the defendant driver entered this intersection at a slow rate of speed and exercised care for the safety of others properly using the streets. Therefore, if the defendant complied with the other provisions of said statute, his failure to stop before entering the intersection did not constitute negligence.

Before the defendant is entitled to the exemptions granted by Code, 1931, 17C-2-5, as amended, applicable to authorized emergency vehicles, it must be shown by a clear preponderance of the evidence that he, immediately prior to and at the time of the collision, was sounding an audible signal. Also, the evidence must reveal that the vehicle was equipped with and displayed a red light visible from a distance of five hundred feet to the front of such vehicle.

What does the evidence show in regard to the required audible signal and red lights alluded to above? The plaintiff said he did not hear the fire truck's siren; nor did he see any lights. Mr. Lister, a disinterested witness called by the plaintiff, testified that he was sitting in his car on Kerens Avenue facing First Street when the collision occurred. He stated unequivocally that he heard the fire truck siren as the truck travelled down Kerens Avenue to the intersection; that he heard the siren when the vehicle was crossing Second Street, a distance of approximately 600 feet; and that he could see the flashing red and white lights on the fire truck from that distance.

Evelyn Murphy, a witness called by the plaintiff, testified that she was in her home on Kerens Avenue between First and Second Streets when she "heard the fire whistle blow." She went to the door and the fire truck had just passed. She stated that she did not see any flashing lights on the truck. It must be noted, however, that she did not see the front of the truck, so she could not have seen the lights. The following testimony was adduced at the trial in relation to the sounding of the siren: "Q. How loud was the siren when you got to the front porch? A. I don't recall hearing the siren at that time. When I heard it, it was before it come to Second Street. Q. But after you got on the front porch, you don't recall? A. I don't recall; no, sir. I don't remember hearing it."

The defendant, a paid member of the Elkins Volunteer Fire Department and the regular driver, testified that he turned the truck lights on prior to leaving the garage. As to the operation of the siren, the following question and answer appear in the record: "Q. Did you operate this siren and did it sound at any time during the course of your trip to this fire? A. Yes, sir. The siren was sounding all the time that we was on the way." This testimony was explicitly supported by that of three volunteer firemen who were on the truck at the time of the accident.

Concerning the speed of the fire truck as it entered the intersection, the defendant and the three firemen stated that it was travelling approximately five miles per hour.

They all stated that the Honda upon which the plaintiff was riding was being operated at a fast rate of speed although none designated any specific speed. The physical facts tend to support the evidence of excessive speed by the Honda. Several witnesses, including those of the plaintiff, testified that the Honda, upon colliding with the fire truck, was propelled through the air, over the back end of the truck and on to Kerens Avenue where it finally came to rest under a parked automobile.

In further support of his complaint the plaintiff testified that the defendant was negligent in the manner in which he turned from Kerens Avenue onto First Street. He says that the defendant drove so far to his left that he was near the northeast curb of the intersection. This, says the plaintiff, prevented him from avoiding the crash. To determine whether this is evidence of negligence so as to require jury consideration, we must again look to the testimony and to Code, 1931, 17C-2-5, as amended.

In explanation of the manner in which this turn was made, the defendant testified as follows: "I cut the turn short, sir. I come here (indicating). I couldn't swing because of the cars over here. I cut the corner short." It appears from the testimony of several witnesses, and it is undisputed, that cars were parked on both sides of Kerens Avenue near the intersection; also cars were parked on the south side of First Street near such intersection. In this situation the defendant, driving an authorized emergency vehicle responding to an emergency call, was justified in turning the corner as he did. He was driving slowly and with regard for the safety of others. He therefore qualified for the exemptions granted in the aforesaid code provision. Furthermore, in these circumstances, the defendant had a right to believe that other drivers in the area would observe the provisions of Code, 1931, 17C-9-5, as amended. That statute provides, in effect, that upon the immediate approach of an authorized emergency vehicle properly equipped and operated with the required audible signal and lights, the driver of every other vehicle shall yield the right of way and stop until such emergency

vehicle has passed. This the plaintiff failed to do, even though all of the positive evidence in the record showed unequivocally that the vehicle driven by the defendant sounded an audible signal and exhibited the necessary red lights.

The only apparent conflict in the evidence relates to the sounding of the siren and exhibiting of the lights on the emergency vehicle operated by the defendant. On this matter there was positive and negative evidence. In addition to the defendant, four witnesses, one of whom was called by the plaintiff, testified in a most positive manner that the siren was sounded and lights were displayed as required by the statute. The plaintiff and Mrs. Murphy stated that they did not hear the siren or did not recall hearing it, although Mrs. Murphy did hear it before the truck arrived at Second Street, almost a block away.

The evidence of the plaintiff and his witness is negative in character. The most that can be said of it is that they did not hear the siren. That, however, is no evidence that it was not sounded. Concerning positive and negative evidence, this Court, in *Cavendish* v. *Chesapeake & Ohio Ry. Co.*, 95 W. Va. 490, 121 S. E. 498, said in Syllabus 2: "Whether a conflict arises between positive and negative evidence of this character depends upon the facts and circumstances of each case from which it may be determined whether such negative evidence has any probative value." Considering the facts and circumstances of this case, we think the evidence of the plaintiff and Mrs. Murphy is purely negative and is entitled to very little weight in comparison with the positive evidence adduced at the trial. See *Workman* v. *Wynne*, 142 W. Va. 135, 94 S. E. 2d 665, *Snyder* v. *Baltimore & Ohio Railroad Co.*, 135 W. Va. 751, 65 S. E. 2d 74, and *Jones* v. *Virginian Railway Company*, 115 W. Va. 665, 177 S. E. 621.

When negligence is relied upon as the basis of an action for damages, the plaintiff must prove that the defendant was guilty of primary negligence and that such negligence was the proximate cause of the injuries of which the plaintiff complains. If the plaintiff does not successfully carry

this burden his action must fail. In *Fleming* v. *Hartrick,* 100 W. Va. 714, 131 S. E. 558, this Court said: "Negligence is never presumed: it must, when relied on as the basis of an action for damages, be established by a preponderance of the evidence, and unless so established the plaintiff is not entitled to recover, and the court should so instruct the jury." See also *Griffith* v. *Wood,* 150 W. Va. 678, 149 S. E. 2d 205; *Alexander* v. *Jennings,* 150 W. Va. 629, 149 S. E. 2d 213; *McCoy* v. *Cohen,* 149 W. Va. 197, 140 S. E. 2d 427; *Burdette* v. *Burdette,* 147 W. Va. 313, 127 S. E. 2d 249; *Mabe* v. *Huntington Coca-Cola Bottling Company,* 145 W. Va. 712, 116 S. E. 2d 874; *Davis* v. *Fire Creek Fuel Co.,* 144 W. Va. 537, 109 S. E. 2d 144.

Upon consideration of the evidence we find that the defendant complied fully with the requirements of Code, 1931, 17C-2-5, as amended, thereby being entitled to the exemptions granted therein. As hereinbefore noted, being the driver of an authorized emergency vehicle responding to an emergency call, a different standard of care must be applied to him. His compliance with the statute negates negligence in the circumstances of this case.

While a plaintiff in an action based on negligence is not required to prove his case beyond a reasonable doubt, he must, in order to recover, make it appear by a preponderance of the evidence that the defendant was negligent. A mere scintilla of evidence is insufficient to carry the case to the jury. *Keirn* v. *McLaughlin,* 121 W. Va. 30, 1 S. E. 2d 176. The plaintiff in the instant case has failed to show by a preponderance of the evidence that the defendant was negligent.

There being no credible evidence of primary negligence on the part of the defendant, it was proper for the trial court to set aside the verdict of the jury and the judgment entered thereon and to enter judgment for the defendant. Since a motion for a directed verdict was made by the defendant at the conclusion of the evidence, this is in accordance with the provisions of Rule 50 (b), Rules of Civil Procedure.

For the reasons stated herein the judgment of the Circuit Court of Randolph County is affirmed.

*Affirmed.*