Joe Adams, *Administrator of Estate of William Wade Garrettson, Deceased*

*v.*

Pete Sparacio, *Administrator, etc.*

(No. 13151)

Submitted January 30, 1973.     Decided May 22, 1973.

*William W. Talbott, Steptoe & Johnson, Kingsley R. Smith, Robert M. Steptoe, Jr.,* for appellees.

*Morton & Garrett, Ernest V. Morton, Jr., William C. Garrett,* for appellant.

CAPLAN, JUDGE:

This case is before the Court on appeal from a final judgment of the Circuit Court of Webster County which was entered in a civil action instituted in that court. In that action the plaintiff, Joe Adams, administrator of the Estate of William Wade Garrettson, deceased, sought to recover damages from the defendants, Pete Sparacio, Administrator of the Estate of John Lucian Legg, deceased Vernon C. Miller and Harvey E. Miller for the wrongful death of Garrettson, allegedly caused by the negligence of said defendants.

The tragic accident, resulting in the deaths of the plaintiff's decedent and three young men in the Legg automobile and which gave rise to this action, occurred at 10:30 P.M. on April 3, 1969, on West Virginia Route 20 in Webster County, near the community of Camden on Gauley. At the aforesaid time Mr. Garrettson, proceeding to his regular place of employment at Donegan No. 10 coal mine, was driving his pickup truck along said Route 20. Vernon Miller, a foreman at the same mine, was also on his way to work and was following Garrettson in a jeep which was owned by his son Harvey, who was joined as a defendant herein. Roy Claypool and Joe Hamrick, fellow employees of Vernon Miller, were passengers in the Miller jeep at the time of the accident.

According to Vernon Miller's testimony he had followed the Garrettson vehicle for some distance and, upon passing through Camden on Gauley and approaching a straight stretch in the highway, undertook to pass him. Miller testified that the forward vehicle was travelling about 35 to 40 miles per hour; that, as he began to pass he observed the road and saw no traffic approaching from the opposite direction; that he overtook the Garrettson

pickup truck and promptly returned to his proper lane of traffic; and that he then saw a vehicle approaching him at a distance of about 300 feet.

The approaching vehicle, owned and being driven by John L. Legg, a Viet Nam veteran who had lost his legs in that conflict, was a 1969 Chevrolet Chevelle Supersport car, specially equipped with hand controls. At a point in the highway, after Miller had passed the Garrettson vehicle, there was a collision between the Legg automobile and the Miller jeep. The Miller vehicle, according to its driver, being disabled and uncontrollable as a result of the collision, struck a tree and went over an embankment onto a railroad track. The Legg automobile, after the first collision, veered completely out of control and collided with the Garrettson truck. The second collision resulted in the immediate death of William Wade Garrettson who, apparently anticipating the collision, had pulled over to the side, clear off the road and onto the berm.

Edith Garrettson, the widow of the deceased and administratrix of his estate, instituted a wrongful death action against Pete Sparacio, Administrator of the Estate of John L. Legg and the Millers, alleging that her husband's death was caused by the reckless and negligent acts of Legg or Miller or both. Defendants Vernon and Harvey E. Miller answered the complaint, denying negligence and charging that the collision resulting in Garrettson's death was caused solely by the negligence of John Legg. Defendant Sparacio answered by denying negligence on the part of Legg and charged Vernon Miller with the negligent operation of his vehicle which he alleged was the proximate cause of the collision.

While this action was pending, Edith Garrettson, on November 17, 1969, departed this life. Subsequently, on December 4, 1969, Joe Adams was duly appointed administrator of William Wade Garrettson's estate and, by order of the court dated December 19, 1969, was substituted as plaintiff in this action.

Upon trial of this case, after the plaintiff had rested, the defendants, Vernon and Harvey Miller, filed a motion for a directed verdict, the grounds therefor being that the plaintiffs had totally failed to prove a prima facie case of negligence against them. The trial judge first overruled their motion but the next morning when court convened announced that he had changed his mind. He then reversed his former ruling and sustained the motion for a directed verdict for the Millers. The judge announced as his reason for changing his ruling that upon study of the testimony of Billy Joe Legg he determined that such testimony did not create the conflict in the evidence that he had first attributed to it. He first believed that Billy Joe Legg had testified that the Miller jeep was on the double line in the highway, a fact which may have created an issue for the jury to decide. A subsequent careful analysis of Billy Joe Legg's testimony, however, revealed to the judge that the boy did not even know whether the collision was with the jeep or the truck of Garrettson. This young witness' testimony, the judge believed, clearly showed that he was not cognizant of the circumstances concerning this accident and, in fact, was paying no attention whatever to the position of the cars or any other matter concerning the collision. It therefore was the position of the trial judge that this young man's testimony amounted, at most, to speculation and conjecture and that without it there was no prima facie evidence of negligence on the part of Vernon Miller, the driver of the jeep.

Defendant Sparacio objected to the court's ruling and stated that he would offer further evidence which would show negligence on the part of Vernon Miller. Plaintiff's counsel related to the court that he had no previous knowledge of such evidence and moved the court to reopen the case and reconsider his ruling so that the evidence could be presented. The record reveals that the court then considered the evidence which the defendant said would be offered and decided that it would add nothing to change his ruling. He therefore denied the motion to

reconsider his ruling and the Millers remained directed out of the case. The plaintiff, appellee here, complains on this appeal of the court's action in directing a verdict in favor of the Millers and of its refusal to permit the additional evidence.

At the conclusion of all of the evidence the plaintiff filed a motion for a directed verdict against defendant Sparacio on the ground that a prima facie case of negligence certainly had been proven against John L. Legg and that there was not any evidence of any nature showing that Garrettson had been guilty of contributory negligence. The court sustained the motion and directed the jury to return a verdict for the plaintiff. The amount of damages, however, was limited by the court to the sum of $17,589.42. Complying with the court's instruction, the jury returned a verdict in that exact amount, assessing the damages as follows: (1) Solatium $10,000.00; (2) pecuniary loss $4,649.77; (3) funeral expenses, ambulance, wrecker, loss of truck $2,939.65. It is from the judgment entered on this verdict that the defendant prosecutes this appeal. In addition, the plaintiff cross-assigns error on this appeal. He complains that the court erred in directing a verdict in favor of the Millers at the conclusion of the plaintiff's evidence. He also contends that it was error for the court to limit the plaintiff's recovery for pecuniary loss because of the death of Garrettson's wife and in refusing to hold that Phyllis Garrettson was a dependent distributee under the wrongful death statute.

The defendant assigns as error the court's act in directing a verdict in favor of the Millers; the court's refusal to hear additional evidence which he contends would make a showing of negligence against Vernon Miller; and the court's act of directing a verdict in favor of the plaintiff against defendant Pete Sparacio.

Nothing in the record of this case suggests, even remotely, that William Wade Garrettson was negligent or was in any way guilty of any act which contributed to the collisions resulting in his death. The controversy therefore

centers around the cause of the Miller-Legg collision. This brings us to a consideration of the defendant's assignment of error which asserts that the court erred in directing a verdict in favor of the Millers.

It is well established in this and other jurisdictions that a plaintiff, in order to successfully maintain an action based on negligence, bears the burden of proving by a preponderance of the evidence that the defendant was guilty of primary negligence and that such negligence was the proximate cause of the injury of which the plaintiff complains. A mere scintilla of evidence is insufficient to carry the case to the jury. *Davis v. Cross,* 152 W.Va. 540, 164 S.E.2d 899; *Donnally v. Payne,* 89 W.Va. 585, 109 S.E. 760; *Ketterman v. Dry Fork Railroad Co.,* 48 W.Va. 606, 37 S.E. 683. See *Alexander v. Jennings,* 150 W.Va. 629, 149 S.E.2d 213; *Mabe v. Huntington Coca-Cola Bottling Company,* 145 W.Va. 712, 116 S.E.2d 874; and *Fleming v. Hartrick,* 100 W.Va. 714, 131 S.E. 558.

Did the plaintiff establish a prima facie case of negligence against Vernon Miller? We think not. The only positive evidence of the position of the Miller vehicle in relation to the center of the highway was related by Vernon Miller. He stated in a most positive manner, both on direct and cross-examination, that after he passed the Garrettson vehicle he returned to his proper lane of traffic; that he remained in that lane; and that he was in such lane when the collision with the Legg car occurred. Although Claypool and Hamrick, passengers in the Miller jeep, testified that they were not certain of the position of the jeep in the road at the time of the collision with Legg, Claypool testified that Miller returned to his proper lane after passing and so far as he knew remained there until the collision. Mr. Hamrick acknowledged that he testified in a former deposition that the jeep was on its own side of the road prior to and at the time of the impact.

The testimony of Billy Joe Legg, upon careful examination, fails entirely to place the Miller jeep on the center line or in Legg's lane of traffic. Although he first

indicated that the jeep was on such line, as the trial judge noted, a consideration of his testimony as a whole clearly reveals that he was not cognizant of the position of the vehicles at the time of the collision. Certainly this young man offered no positive evidence.

The only other survivor of the Legg vehicle was Guy Hosey, III, a marine at home on leave. In response to extensive direct and cross-examination he related the events of the evening of April 3, 1969 concerning the activities of those in the Legg vehicle who were in the subject collision. He stated that "he [John Legg] took off pretty fast and they told him to slow down." This witness, noting that he was seated in the back seat, behind the driver, John Legg, testified that he could not see the road and did not know the position of the Legg car in the highway at the time of the collision. He offered no positive evidence which in any manner showed negligence on the part of Vernon Miller. Tragically, these were the only two witnesses who lived to testify about the mournful events of that night.

By reason of the foregoing, which reflects the evidence in the record, it is clear that the plaintiff failed to prove a prima facie case of negligence against Vernon Miller. At best, the evidence offered by the plaintiff was founded on speculation and conjecture, and in view of Miller's positive testimony, it was incumbent upon the trial judge to direct a verdict for that defendant. As briefly but succinctly stated in Point 1 of the Syllabus of *Oates v. Continental Insurance Company*, 137 W.Va. 501, 72 S.E.2d 886: "A jury will not be permitted to base its findings of fact upon conjecture or speculation." See *State ex rel. Queen v. Sawyers*, 148 W.Va. 130, 133 S.E.2d 257; *Payne v. Ace House Movers, Inc.*, 145 W.Va. 86, 112 S.E.2d 449; *State ex rel. Shatzer v. Freeport Coal Company*, 144 W.Va. 178, 107 S.E.2d 503; and *Ritz v. Kingdon*, 139 W.Va. 189, 79 S.E.2d 123.

It is elementary in the law that a question as to whether the plaintiff has sustained the burden of establishing his

claim by a preponderance of the evidence is ordinarly one for jury determination; however, the jury's action is subject to the control of the trial court and the Supreme Court of Appeals. *Burk v. Huntington Development & Gas Co.,* 133 W.Va. 817, 58 S.E.2d 574. While a court should proceed with caution in directing a verdict, it should do so if the evidence is in such posture that it would be compelled to set aside a verdict for the other party., *Beneficial Finance Company of Charleston v. Collins,* 150 W.Va. 655, 149 S.E.2d 221; *Adkins v. City of Hinton,* 149 W.Va. 613, 142 S.E.2d 889; *McCoy v. Cohen,* 149 W.Va. 197, 140 S.E.2d 427; *Lightner v. Lightner,* 146 W.Va. 1024, 124 S.E.2d 355; *Bank of White Sulphur Springs v. Lynch,* 93 W.Va. 382, 116 S.E. 685; *Bank of Greenville v. Lowry & Co.,* 79 W.Va. 10, 90 S.E. 390.

Applying the foregoing principles of law to the instant case we are of the opinion that the evidence of negligence on the part of Miller was based entirely on speculation and conjecture and could not prevail over Miller's positive evidence; that to have allowed a verdict to stand against him would have constituted reversible error; and that the trial court correctly directed the Millers out of the case.

Upon the court's ruling, counsel for defendant Sparacio, excepting to such ruling, moved the court to set aside the directed verdict and permit the introduction of testimony of a defense witness. It was the position of counsel that this evidence would show negligence on the part of the Millers. The testimony which the defense at this point desired to introduce was that of William Legg, the father of John L. Legg. Counsel related to the court that Mr. Legg would testify that he arrived at the scene of the accident shortly after it occurred and before the state police arrived; that he walked down the road approximately sixty feet from the second collision where he found mud, glass and other debris in the middle of the road; that he found a tire track leading into the debris from the direction of Camden on Gauley "just over the

centerline on the Legg side of the road" and related further observations concerning these collisions. Counsel for defendant stated that he had two witnesses who would indicate that the accident was the sole fault of Miller. This motion was overruled by the court.

Thereupon, the plaintiff, expressing surprise at the evidence which the defense said it would offer, moved the court to reconsider its ruling and reopen the case to permit the testimony of William Legg. The court, acknowledging that the trial of this case was begun in June and continued to September, ruled that there had been more than ample opportunity for witness Legg to have been called by the plaintiff. By reason thereof and from a consideration of what counsel related, the court was of the opinion that the testimony would only add further speculation and would not supply meaningful evidence for the jury to consider. He therefore overruled the plaintiff's motion to reopen the case. This action, as noted above, was assigned as cross-error by the plaintiff.

As stated in 88 C.J.S., *Trial,* Section 104, a motion to reopen a case to permit the introduction of further evidence is addressed to the sound discretion of the trial court and the exercise of discretion is not subject to review by an appellate court unless there has been an abuse thereof. See *State v. Fitzsimmons,* 137 W.Va. 585, 73 S.E.2d 136; *State v. Barker,* 128 W.Va. 744, 38 S.E.2d 346; and *Wills v. Montfair Gas Coal Company,* 104 W.Va. 12, 138 S.E. 749. See also *Farley v. Farley,* 136 W.Va. 598, 68 S.E.2d 353; *Weaver v. Wheeling Traction Co.,* 91 W.Va. 528, 114 S.E. 131; and 19 M.J. *Trial,* Section 9. Although the discretion of the court should be liberally exercised, where it appears that the moving party has failed to show good cause for reopening a case, it is a proper exercise of discretion to refuse to permit him to do so. See 88 C.J.S., *Trial,* Section 104 and the cases cited in the footnotes thereto.

We perceive no abuse of discretion in this instance. The trial court believed that the proffered evidence could

have been introduced in the regular course of the trial and, furthermore, that such evidence would add nothing to cause a change in its ruling. Upon examining the entire record, we are unable to say that the court's ruling constituted an abuse of discretion. We are of the opinion, therefore, that this assignment of error by the defendant and cross-error by the plaintiff are without merit.

Defendant Sparacio complains that the court erred in directing a verdict for defendants Vernon and Harvey Miller inasmuch as all defendants were charged with joint and several liability. Whether one defendant of several may be directed out of a case depends upon the nature of the liability with which they are charged. Pertinent to this question is the following quote contained in 53 Am. Jur., *Trial,* Section 391: "The general rule is that if the liability asserted in an action is joint, and to authorize any recovery there must be proved a joint liability, the court cannot direct a verdict in favor of one defendant without taking the same action as to all; but if a recovery may be permitted against less than all the defendants, a verdict may be directed in favor of such as are not shown to be liable. Whether such a direction might be given at the close of the plaintiff's case or should be postponed until the close of the whole case was at one time a disputed question, but it is now quite well settled that the matter rests in the sound discretion of the trial court * * *."

Inasmuch as the complaint in this case does charge joint and several liability and in view of the failure of the plaintiff to establish a prima facie case of negligence against the Millers, as hereinbefore noted, we find no abuse of discretion on the part of the trial court in directing a verdict for two of the three defendants charged in the complaint.

In a further assignment of error defendant Sparacio asserts that the court erred in directing a verdict for the plaintiff at the conclusion of all the evidence. In the instant case we have ruled that the court did not abuse its

discretion by directing the Millers out of the case. The consideration of this assignment, therefore, pertains only to the cause of the collision between the Legg and Garrettson vehicles. It has been readily admitted by defendant Legg in his brief that "Obviously the evidence presented showed that Garrettson was not negligent and that his vehicle was struck by the Legg vehicle." Since there is no question of contributory negligence on the part of Garrettson and inasmuch as there is ample evidence of inordinate speed and recklessness on the part of John L. Legg constituting negligence and as the only positive evidence exonerates the Millers of negligence, any verdict by the jury in favor of the defendant would be unwarranted.

As stated by the Court in Point 4 of the Syllabus of *Vaccaro Brothers & Company v. Farris,* 92 W.Va. 655, 115 S.E. 830: "Where the evidence given on behalf of defendant is so clearly insufficient to support a verdict for him that such verdict, if returned by the jury, must be set aside, and the evidence in support of the plaintiff's claim is clear and convincing, it is the duty of the trial court, when so requested, to direct a verdict for the plaintiff." *Hollen v. Linger,* 151 W.Va. 255, 151 S.E.2d 330; *Beneficial Finance Company of Charleston v. Collins,* 150 W.Va. 655, 149 S.E.2d 221; *Adkins v. City of Hinton,* 149 W.Va. 613, 142 S.E.2d 889. Applying the principles set out in the *Vaccaro* case we are of the opinion that the evidence is clearly insufficient to support a verdict for the defendant and that if such verdict were returned by the jury it would be incumbent upon the trial court to set it aside. Therefore we affirm the action of the court in directing a verdict for the plaintiff.

The final matter to be considered on this appeal is the plaintiff's cross-assignment of error wherein he complains that the court should not have limited recovery of financial and pecuniary loss to $4,649.77, the amount, as stipulated by the parties, that Garrettson would have earned between the date of his death and the date of his widow's death. Also, the plaintiff asserts that the trial

court erred in ruling that Phyllis Garrettson Wooddell, the daughter of William Wade Garrettson, was not a dependent distributee under our wrongful death statute.

Disposing first of the question of whether Garrettson's daughter is a dependent distributee under the wrongful death statute, we are of the opinion to and do answer in the negative. We arrive at this conclusion after a careful examination of the record which reveals that Phyllis Garrettson Wooddell was in no manner dependent upon her deceased father. As reflected by the evidence, she did not even meet the requirements of partial dependency as did Mr. Ruggiero in *Ruggiero v. Manchin,* 456 F.2d 1282 (4th Cir. W.Va. 1972).

In that case, upon the death of his wife which was caused by the wrongful act of the defendant, the court upheld the district court's ruling which permitted the introduction of evidence as to the pecuniary value of her services during her lifetime. The court held that Mrs. Ruggiero's services did have a pecuniary value and that her husband was partially dependent upon her. Recovery for pecuniary loss was therefore allowed.

In *Carianni v. Schwenker,* 38 N.J. Super. 350, 118 A.2d 847, *Correia v. Van Camp Sea Food Co.,* 113 Cal. App. 2d 71, 248 P.2d 81 and *Clement v. Cummings,* 212 Ore. 161, 317 P.2d 579, those permitted to recover damages for pecuniary loss were proved by evidence to have been at least partially dependent upon the deceased or had a moral right to rely and did rely upon the deceased for support, whether such reliance was in whole or in part.

The foregoing cases which were cited with approval in *Ruggiero, supra,* indicate that dependency, to permit recovery for pecuniary loss, need not be total. Such dependency may be only partial. Also, services rather than monetary support may constitute a basis for such recovery. The term "dependent distributee", as used in Code, 1931, 55-7-6, as amended, clearly contemplates that one recovering for pecuniary loss must have been dependent upon the deceased, whether it be for monetary

support or for services. In the instant case, as noted above, the daughter was in no manner dependent upon her father. The plaintiff's assertion that Phyllis Garrettson Wooddell was a dependent distributee of her father, as contemplated by the above statute, is therefore without merit.

The basic questions now to be answered are whether, upon the death of Edith Garrettson, the only dependent distributee, any recovery should be allowed on the basis of her pecuniary loss and if such recovery is allowed, should it be limited to the period of time which elapsed between the date of Garrettson's death and the date of death of his widow.

At common law no action existed for a death caused by the wrongful act of another. *Jackson v. Cockill,* 149 W.Va. 78, 138 S.E.2d 710; *Dunsmore v. Hartman,* 140 W.Va. 357, 84 S.E.2d 137; *Swope Adm'r. v. Keystone Coal and Coke Co.,* 78 W.Va. 517, 89 S.E. 284. As deftly stated by the learned Justice Cardoza in *Van Beeck v. Sabine Towing Co.,* 300 U.S. 342, 81 L. Ed. 685, 57 S. Ct. 452, "Vengeance, though permissible during life, was not to 'reach beyond the grave.'" This prohibition was eliminated, however, in 1846 by the adoption of Lord Campbell's Act. Statutes following its tenor were quickly adopted in this country, our state joining the trend upon its inclusion into the Union in 1863. Today there is not a state in our Republic which lacks a remedy for the recovery of damages for wrongful death.

The West Virginia statute relating to the recovery of damages for wrongful death places such damages in two categories. Code, 1931, 55-7-6, as amended. Where pertinent that statute provides: "In every such action the jury may award such damages as they deem fair and just, not exceeding ten thousand dollars * * *. In addition, the jury may award such further damages, not exceeding the sum of one hundred thousand dollars, as shall equal the financial or pecuniary loss sustained by the dependent distributee or distributees of such deceased

person, and shall be distributed * * * to decedent's dependent distributees * * *."

An amount up to ten thousand dollars specified in the statute can be recovered without proving any financial loss. This recovery is for grief, bereavement, and mental distress and is not in issue in this case. The additional amount referred to in the statute requires, for recovery, a showing of pecuniary loss by a dependent distributee. This is the element of damages, the recovery of which is questioned on this appeal. It is undisputed that upon Garrettson's death his widow was a dependent distributee. Therefore, she was then entitled to recover the amount of pecuniary loss sustained by her by reason of her husband's death. This was not an action instituted on behalf of the deceased's estate but a new cause created for the benefit of his dependent distributee, his widow in this instance, the recovery being limited, as aforesaid, to the loss sustained by her. This being an action brought exclusively for the benefit of the dependent distributee, such action survives to such dependent distributee's estate upon her death. *Dunsmore v. Hartman,* 140 W.Va. 357, 84 S.E.2d 137.

Pertinent to the foregoing is the following quote from *Van Beeck v. Sabine Towing Co., supra:* "When we remember that under the death statutes an independent cause of action is created in favor of the beneficiaries for their pecuniary damages, the conclusion is not difficult that the cause of action once accrued is not divested or extinguished by the death of one or more of the beneficiaries thereafter, but survives, like a cause of action for injury to a property right or interest, to the extent that the estate of the deceased beneficiary is proved to be impaired."

It has been widely held and we are in agreement with the proposition that where, upon the death of the beneficiary entitled to damages for wrongful death, the action survives to such beneficiary's estate, the measure of damages to which the estate is entitled is the loss from

the time of the death of the injured party to the time of the beneficiary's death. *Van Beeck v. Sabine Towing Co., supra; Sider v. General Electric Co.,* 238 N.Y. 64, 143 N.E. 792; *Odlivak v. Elliott,* 82 F. Supp. 607; Annotation, 43 A.L.R. 2d 1291. See SPEISER, RECOVERY FOR WRONGFUL DEATH, Section 8:21 and the cases cited in the footnotes thereto.

Inasmuch as the instant action is one to compensate the widow for pecuniary loss caused by the negligent killing of her husband, we are of the opinion that her death does not abate the action but that the administrator may continue it for the recovery of her loss up to the moment of her death, though not for anything thereafter. We think the statutory action for wrongful death should be supplemented by reason and that reason supports the proposition that the widow was fully entitled to such damages during her lifetime. It would be beyond the scope of reason to say that she suffered pecuniary loss after her death. While there are cases to the contrary, we think that the cases favoring survival within the aforesaid limits are supported by preponderant authorities and represent the better reasoned cases.

For the reasons stated herein the judgment of the Circuit Court of Webster County is affirmed.

*Judgment affirmed.*