Peter C. HALSTEAD, Administrator
Estate of Erik F. Wahlund,
Deceased, Plaintiff,

v.

UNITED STATES of America, Jeppesen &
Co. and Katherine H. Saloomey, Administratrix, c. t. a., d. b. n., Estate of Willard Vernon Wahlund, Deceased, Defendants.

Katherine H. SALOOMEY, Administratrix, c. t. a., d. b. n., Estate of Willard
Vernon Wahlund, Deceased, Plaintiff,

v.

JEPPESEN & CO., Defendant.

Katherine H. SALOOMEY, Administratrix, c. t. a., d. b. n., Estate of Willard
Vernon Wahlund, Deceased, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. Nos. B–77–270, B–77–274
and B–77–303.

United States District Court,
D. Connecticut.

Dec. 23, 1981.

James M. Kearns, Bridgeport, Conn., for plaintiff.

John J. Cotter, Thomas H. Cotter, Bridgeport, Conn., for defendants.

Gregory A. Saum, Raymond W. Beckwith, Joseph P. Gormley, Jr., Thomas E. Lee, Bridgeport, Conn., James P. Piper, Washington, D. C., for Jeppesen & Co.

Donna Fatsi, Asst. U. S. Atty., New Haven, Conn., for United States.

RULING ON CHOICE OF LAW IN ACTIONS B–77–270 AND B–77–303 AGAINST UNITED STATES OF AMERICA

EGINTON, District Judge.

These wrongful death actions arose out of the tragic crash of a small private plane, a Beech Sierra, into a mountain ridge near Martinsburg, West Virginia on August 31, 1975. Killed were the pilot of the plane, Willard Vernon Wahlund, his father and his young son Erik. Plaintiffs Katherine H.

Saloomey and Peter C. Halstead are the administratrix and administrator of Vernon's and Erik's respective estates.

Plaintiff Saloomey alleges that the accident resulted from the negligence of federal air traffic controllers operating out of Dulles Airport in Virginia and from a defect in a navigational chart manufactured by defendant Jeppesen and Company. Plaintiff Halstead's complaint contends that the deaths were caused by the negligence of the controllers, a defect in the Jeppesen navigational chart and the negligence of the pilot Wahlund.

Both plaintiffs and defendant United States have requested a ruling from this court as to whether plaintiffs' claims against the United States should be governed by the law of West Virginia which imposes a fixed monetary limit on recoverable damages.

Both actions against the United States are brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.* which provides that the liability of the United States should be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The phrase "the law of the place" has been construed to include that state's conflict of laws principles. *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Gelley v. Astra Pharmaceutical Products, Inc.*, 610 F.2d 558, 560 (8th Cir. 1979).

▪ The alleged negligent acts and omissions of the air traffic controllers occurred at the Dulles Air Traffic Control facilities in Virginia, and therefore the liability of the United States for the negligence of its employees is governed by the law of the state of Virginia. Virginia, *contra* to the trend in most United States jurisdictions, has recently expressly rejected the conflicts rule of § 145 of the Restatement (Second) Conflict of Laws (1971) which would require that the law of the state with the most significant relationship to the litigation be applied.[1] *McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662 (1979). The court in *McMillan* reaffirmed its adherence to the rule of *lex loci delicti* : the law of the state where the tort occurred governs the substantive elements of the cause of action. *Maryland v. Coard*, 175 Va. 571, 6 S.E.2d 454 (1940). In general, courts following the rule of *lex loci delicti* have deemed the place of the tort to be the place where the wrongful act or omission occurred. *St. Clair v. Righter*, 250 F.Supp. 148, 155 (D.C.Va.1966); *see also* Annot., 77 ALR2d 1266, 1273 (1961). Thus the law of West Virginia the site of the crash, governs the rights and liabilities of the parties.

At the time of the crash, August 31, 1975, the West Virginia Wrongful Death Act[2] imposed a fixed monetary limit on recoverable damages. W.Va.Code 55–7–6 (1965). In 1976, this section was rewritten without any limitation, but the new version does not apply to deaths occurring prior to July 1, 1976. W.Va.Code 55–7–6 (1976). Under the 1965 statute, the distributees of the decedents were permitted to recover $10,000 for the wrongful death itself, $100,000 for financial and pecuniary losses sustained

1. Section 145 of the Restatement (Second) of Conflict of Laws (1971) provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to that occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties,
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to that particular issue.

2. The state's Wrongful Death Act actually consists of three statutes: W.Va.Code 55–7–5, which deals with the creation of the cause of action; W.Va.Code 55–7–6, which relates mainly to the damages that are recoverable; and W.Va.Code 55–7–7, which centers on how such claims may be compromised.

by the dependent distributees of the deceased, and special damages for funeral, medical and other expenses.

Thus, West Virginia law would limit plaintiff Saloomey's recovery to $100,000 plus funeral expenses. Plaintiff Halstead could recover no more than $10,000 plus funeral expenses unless evidence were introduced of some financial or pecuniary loss sustained by a dependent distributee of the unemancipated minor Erik Wahlund. *Bond v. Huntington*, W.Va., 276 S.E.2d 539 (1981); *Salerno v. Manchin*, W.Va., 213 S.E.2d 805 (1974); *Adams v. Sparacio*, 156 W.Va. 678, 196 S.E.2d 647 (1973).

Because matters of procedure are generally regulated by the law of the forum, Restatement (Second) Conflict of Laws § 124, courts in some jurisdictions have attempted to mitigate the harsh results of the *lex loci delicti* rule by classifying issues such as the measure of recovery as procedural rather than substantive, and thus governed by the law of the forum rather than the law of the place of the wrong.[3] Plaintiffs have not cited nor has this court discovered, any such decisions by the Virginia Supreme Court. Instead, plaintiff argues that the Virginia Supreme Court would simply refuse to apply the West Virginia damage limitation on public policy grounds in view of the fact that Virginia abolished its own wrongful death damage limitation in 1976.

The argument is not persuasive. First, the fact that a state has eradicated such a limitation does not indicate "a committed public policy against any limitation qua limitation...." *Patch v. Stanley Works*, 448 F.2d 483, 491 (2d Cir. 1971). Second, the case of *McMillan v. McMillan, supra*, makes it doubtful that the Virginia Supreme Court would refuse to apply West Virginia's limit either on public policy grounds or because of the hardship the limit would impose on the plaintiffs. In *McMillan*, a passenger injured in an automobile accident in Tennessee brought suit against her husband, the driver. The Virginia Supreme Court ruled that Tennessee law precluded a wife from maintaining an action against her husband, notwithstanding the fact that the common law rule of interspousal immunity had been abolished in Virginia in 1971. By the same token, this Court believes that the Supreme Court of Virginia would apply the damage limitation of West Virginia in spite of Virginia's abolition of its own damage limitation.

Consequently, this Court is constrained to apply the West Virginia Wrongful Death Act damage limitation to the claims against the United States in the instant suit.

---

**3.** *See e.g., Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 525 (1961), which was subsequently disapproved to the extent that it was based on the theory that the measure or extent of damages is a procedural or remedial matter to be governed by the law of the forum. *Davenport v. Webb*, 11 N.Y.2d 393, 230 N.Y.S.2d 17, 183 N.E.2d 902 (1962). *See* Annot., 29 ALR 603 (1970).