IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

_____

No. 13-1244

_____

**FILED**

**October 22, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

PATRICK GRAHAM, as Executor of
the Estate of HELEN GRAHAM;
YOLANDA GRAHAM, JUDY MCNAIR,
BEVERLY RILING, BARBARA LAXTON, and
FRANCES MIKLES, Jointly as
Daughters/Beneficiaries of
HELEN GRAHAM
Petitioners

v.

ROBERT ASBURY,
Respondent

_____

Appeal from the Circuit Court of Raleigh County
The Honorable John A. Hutchison, Judge
Civil Action No. 10-C-879-H

AFFIRMED

_____

Submitted: September 30, 2014
Filed: October 22, 2014

Paul Stroebel, Esq.                    Pamela A. Lambert, Esq.
Stroebel & Johnson, PLLC               Karen S. Hatfield, Esq.
Charleston, West Virginia              Lambert Law Offices
Counsel for the Petitioners            Gilbert, West Virginia
                                       Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

For purposes of awarding wrongful death damages under W.Va. Code § 55-7-6(b) [1992], the determination of whether a spouse, children (including adopted children and stepchildren), brothers, sisters, and parents are "surviving" is made by determining whether they were alive at the time of the wrongful death decedent's demise.

Justice Ketchum:

In this appeal, we consider whether the estate of a distributee under the West Virginia wrongful death act may share in the proceeds of a wrongful death settlement when the distributee, an adult child of the wrongful death decedent, survived the decedent but died before the wrongful death lawsuit was settled and the settlement proceeds were distributed.[1]  The circuit court concluded that under the West Virginia wrongful death act, W.Va. Code § 55-7-6(b) [1992], the distributee's estate was entitled to a share of the wrongful death settlement proceeds because the distributee's right of action vested upon the decedent's death, rather than at the time the wrongful death settlement proceeds were distributed.

After review, we agree with the circuit court and affirm its ruling.

---

[1] We have identified persons eligible to recover under our wrongful death act as "distributees."  We note that some previous opinions from this Court have referred to such persons as "beneficiaries."  However, such persons eligible to recover pursuant to our wrongful death act are actually "distributees," and we therefore use the term "distributee."

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Eighty-six-year-old Helen Graham died on March 19, 2010. She was survived by seven adult children.[2] On September 20, 2010, Patrick Graham, as executor of Mrs. Graham's estate, filed a wrongful death lawsuit against Raleigh General Hospital asserting that Mrs. Graham's death was the result of medical negligence. Approximately three months after the wrongful death lawsuit was filed, one of Mrs. Graham's adult children, Betty Asbury, died.[3]

In July of 2012, a settlement agreement was reached in the wrongful death lawsuit brought by Mrs. Graham's estate against the hospital. Counsel for Mrs. Graham's estate filed a "petition for approval of settlement" with the circuit court. This petition listed two siblings and six adult children[4] as the "known potential beneficiaries of Helen Graham as set forth in the West Virginia wrongful death statute." The settlement approval petition made no mention of Betty Asbury (Mrs. Graham's deceased adult

---

[2] The seven adult children that survived Mrs. Graham are Patrick Graham, Yolanda Graham, Judy McNair, Beverly Riling, Barbara Laxton, Frances Mikles, and Betty Asbury.

[3] Respondent Robert Asbury, Betty Asbury's husband, was the administrator of Betty Asbury's estate.

[4] The two siblings listed in the petition were Margaret DeMezzo and Eli Furo, Jr. The six adult children listed in the petition were Patrick Graham, Yolanda Graham, Judy McNair, Beverly Riling, Barbara Laxton, and Frances Mikles.

child), nor did it state that Betty Asbury's estate had a potential claim under the wrongful death statute, W. Va. Code § 55-7-6(b).

Mrs. Graham's estate provided notice of the settlement hearing to Mrs. Graham's two siblings and to her six surviving children. However, Mrs. Graham's estate did not provide notice of the settlement approval hearing to the administrator of Betty Asbury's estate, Robert Asbury. The lawyer who filed the wrongful death lawsuit later[5] explained his interpretation of the statute and his decision not to provide notice of the settlement hearing to Mr. Asbury:

> [I]t is true that Mr. Asbury did not get notice of the hearing. He did not get notice of the hearing because we did not believe that he was a – even a potential beneficiary under the statute. If we, or if I, believed that he was, I certainly would have provided him notice. . . .
>
> I do want the Court to be aware that at no time did any of the other siblings or Mr. Graham indicate that they wanted Mr. Asbury excluded from the settlement. It was really a matter of my review of the statute, my reading in the statute that he is not a potential beneficiary, and as a result, he was not notified.

During the settlement hearing, there was no mention of Betty Asbury or of her estate's potential claim under the wrongful death act. On July 23, 2012, the circuit

---

[5] This explanation was provided to the circuit court during a hearing in February of 2013.

court entered an order approving the settlement agreement and awarding equal shares of the settlement proceeds to Mrs. Graham's six surviving children.[6]

On September 28, 2012, Mr. Asbury, as administrator of Betty Asbury's estate, filed a "Motion to Set Aside Settlement as Invalid or in the Alternative Motion Seeking Court Ordered Distribution of Wrongful Death Proceeds Pursuant to West Virginia Code § 55-7-6." During a hearing on this motion, Mr. Asbury stated that he was not asking the court to set aside the settlement agreement. Instead, he was asserting that the estate of Betty Asbury had a right to share in the wrongful death settlement proceeds. Mr. Asbury argued that because Betty Asbury was alive at the time of her mother's death, Betty Asbury's estate was entitled to share in the proceeds of her mother's wrongful death settlement.

By order entered on October 21, 2013, the circuit court ruled that Mr. Asbury, as the administrator of the estate of Betty Asbury, was entitled to share in the proceeds of the wrongful death settlement because Betty Asbury was alive at the time of her mother's death. The circuit court concluded that the wrongful death statute, W.Va. Code § 55-7-6(b),

> clearly provides that the court may distribute damages to the surviving children, and this Court is aware of no West Virginia law which would require a [distributee] to survive

---

[6] Mrs. Graham's siblings did not attend the settlement hearing and did not request a share of the settlement proceeds. The settlement amount is confidential.

4

the date of resolution of outside claims against the decedent's estate in order to receive a share of those damages.

Based on this finding, the circuit court ordered that the wrongful death settlement proceeds be divided into seven equal shares, with six shares going to the surviving children, and one share going to Mr. Asbury, as administrator of the estate of Betty Asbury. Following the circuit court's ruling, the six surviving children of Mrs. Graham ("petitioners" or "six surviving children of Mrs. Graham") filed the present appeal with this Court.

## II.

## STANDARD OF REVIEW

This Court set forth the standard for reviewing the findings and conclusions of a circuit court in Syllabus Point 2 of *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997), as follows:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

With this standard in mind, we proceed to consider the parties' arguments.

5

## III.

## ANALYSIS

On appeal, the six surviving children of Mrs. Graham argue that the circuit court erred by ruling that under W.Va. Code § 55-7-6(b), a distributee's right to recover damages vests upon the decedent's death, rather than at the time the proceeds recovered in a wrongful death action are distributed. They argue that because Betty Asbury died before the settlement proceeds were distributed, she is not a distributee under the statute. W.Va. Code § 55-7-6(b) is contained in West Virginia's wrongful death act, W.Va. Code § 55-7-5 [1931] *et seq*. We begin our analysis with a brief examination of the act.

The West Virginia wrongful death act, W.Va. Code § 55-7-5 to -8a, allows a cause of action "[w]henever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof[.]" W.Va. Code § 55-7-5. In *Bradshaw v. Soulsby*, 210 W.Va. 682, 688, 558 S.E.2d 681, 687 (2001), this Court interpreted W.Va. Code § 55-7-5 to mean that in order "[t]o maintain an action for wrongful death, a beneficiary must show two specific elements: that a person has died, and that the death was caused by a wrongful act, neglect or default."

This Court has stated that the "purpose of the wrongful death act is to compensate the beneficiaries for the loss they have suffered as a result of the decedent's death." *White v. Gosiene*, 187 W.Va. 576, 582, 420 S.E.2d 567, 573 (1992). The

6

wrongful death act is a remedial statutory scheme. "Because the wrongful death act alleviates the harshness of the common law, it is to be given a liberal construction to achieve its beneficent purposes." Syllabus Point 6, *Bradshaw v. Soulsby*, *supra*.[7] With this background in mind, we turn to the parties' arguments.

The issue presented is whether the circuit court correctly determined that under W.Va. Code § 55-7-6(b), a distributee's right of action vests upon the decedent's death, rather than at the time the proceeds recovered in a wrongful death action are distributed. The relevant facts are undisputed—Betty Asbury survived her mother (the subject decedent) and was alive at the time the wrongful death lawsuit was filed, but died prior to the settlement of the lawsuit and the distribution of the settlement proceeds. The parties offer differing interpretations of whether, under this factual scenario, Mr. Asbury, as administrator of Betty Asbury's estate, is entitled to share in the settlement proceeds. Our resolution of this issue requires us to analyze W.Va. Code § 55-7-6(b). It states:

---

[7] In accord, *Farley v. Sartin*, 195 W.Va. 671, 680, 466 S.E.2d 522, 531 (1995) ("[O]ur prior decisions . . . firmly established that W.Va. Code, 55-7-5, is a remedial statute and should be liberally construed."); *Martin v. Smith*, 190 W.Va. 286, 292, 438 S.E.2d 318, 324 (1993) ("West Virginia's wrongful death statute is remedial, and is liberally construed to effect the Legislature's intent."); *Baldwin v. Butcher*, 155 W.Va. 431, 184 S.E.2d 428 (1971); *City of Wheeling ex rel. Carter v. Am. Cas. Co.*, 131 W.Va. 584, 590, 48 S.E.2d 404, 408 (1948) ("The statute, being remedial, should be liberally construed."); *Wilder v. Charleston Transit Co.*, 120 W.Va. 319, 322, 197 S.E. 814, 816 (1938) ("The policy of the statute is remedial and not punitive."); *Richards v. Riverside Iron Works*, 56 W.Va. 510, 515, 49 S.E. 437, 438 (1904) ("The statute is remedial, and should be construed liberally for the purpose of carrying out the legislative intent.").

(b) In every such action for wrongful death, the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions *the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death* or would otherwise be equitably entitled to share in such distribution after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section. If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution as set forth in chapter forty-two of this code. If the jury renders only a general verdict on damages and does not provide for the distribution thereof, the court shall distribute the damages in accordance with the provisions of this subsection.

(Emphasis added.)

The six surviving children of Mrs. Graham argue that under the plain language of W.Va. Code § 55-7-6(b), a "surviving" child of the wrongful death decedent "must survive to the distribution date to receive a share of the proceeds. Mrs. Asbury did not survive until that date. Thus, Mr. Asbury has no entitlement to a share of those damages." Conversely, Mr. Asbury argues that the plain language of the statute supports the circuit court's finding that a "surviving" child's right of action under the statute vests at the time of the wrongful death decedent's death, and does not require such a distributee to survive to the distribution date.

Our resolution of this issue begins with a review of our rules of statutory construction. This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the

8

interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995); *see also* Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); and Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Additionally, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted.) With these rules of statutory construction in mind, we turn to W.Va. Code § 55-7-6(b).

The present dispute centers around the parties' conflicting interpretations of the word "surviving" contained in W.Va. Code § 55-7-6(b). As this Court recognized in *West Virginia Health Care Cost Review Authority v. Boone Memorial Hosp.*, 196 W.Va. 326, 472 S.E.2d 411 (1996), "[i]t is a fundamental principle of statutory construction that the meaning of a word cannot be determined in isolation, but it must be drawn from the context in which it is used." *Id.* at 338, 472 S.E.2d at 423.

9

The word "surviving" in W.Va. Code § 55-7-6(b) is contained in a sentence identifying two categories of distributees under the wrongful death act: (1) persons in a specific familial relationship to the decedent irrespective of financial dependence ("surviving" spouse, children, including adopted children and stepchildren, siblings, and parents), and (2) any other persons who were financially dependent on the decedent *at the time of the decedent's death*. (Emphasis added.) The statute does not favor one category of distributees over the other; it simply states that a jury or a court may award wrongful death damages to the persons identified in those two categories.

Under the petitioners' suggested construction of the statute, a distributee in the first category ("surviving" family member) must survive until the date of distribution to receive an award of wrongful death damages. Thus, according to the petitioners, the class of distributees in the first category is not fixed at the time of the decedent's death and may continue to change until the date the damage award is distributed. This construction of the statute creates a substantial difference between the first ("surviving" family members) and second (persons financially dependent on the decedent) categories of distributees. The statute states that persons in the second category are identified based on their relationship to the decedent *at the time of the decedent's death*. Thus, the right of action for distributees in the second category vests upon the death of the decedent and such class of distributees is fixed at that time—upon the death of the decedent.

After review, we find no support for the petitioners' suggested construction of W.Va. Code § 55-7-6(b). The plain language of the statute indicates the Legislature's

10

intent to treat both categories of distributees in an equal manner. W.Va. Code § 55-7-6(b) does not prioritize the two categories of distributees for distribution; rather, it places a distributee in the first category ("surviving" family member of the decedent) on equal footing as a distributee in the second category (a person who was financially dependent on the decedent at the time of the decedent's death). Similarly, the circuit court's construction of the statute—that the right of action for a "surviving" family member in the first category refers to a family member who is "surviving" at the time of the decedent's death—results in both categories of distributees being ascertainable and fixed at the time of the decedent's death. Further, under the circuit court's ruling, the rights of distributees in both categories to receive a wrongful death damage award vests at the same time: upon the death of the decedent.

Additionally, a previous case from this Court addressing the wrongful death act supports the conclusion that a distributee's right to receive damages in a wrongful death action vests at the time of the decedent's death, rather than at the time the wrongful death damages are distributed. This Court discussed whether a wrongful death action brought by a distributee is extinguished upon the death of such distributee in *Adams v. Sparacio*, 156 W.Va. 678, 196 S.E.2d 647 (1973). While the wrongful death statute has been amended since *Adams* was decided, the Court's general discussion of the effect of a distributee's death prior to the resolution of a wrongful death action provides guidance on

11

the issue in the present case.[8]  The Court in *Adams* held that when a distributee died during the pendency of a wrongful death action, the action survived to the distributee's estate.  Specifically, Syllabus Point 7 of *Adams* states, in relevant part: "An action for wrongful death, being one created for the benefit of the distributee of the deceased, does not abate with the death of such distributee[.]"[9]

Based on all of the foregoing, we hold that that for purposes of awarding wrongful death damages under W.Va. Code § 55-7-6(b) [1992], the determination of whether a spouse, children (including adopted children and stepchildren), brothers, sisters, and parents are "surviving" is made by determining whether they were alive at the time of the wrongful death decedent's demise.  Applying this holding to the present case,

---

[8] For a comprehensive review of West Virginia's wrongful death act and the numerous statutory changes to the act, see *McDavid v. U.S.*, 213 W.Va. 592, 584 S.E.2d 226 (2003).

[9] The full text of Syllabus Point 7 of *Adams* is as follows:

> An action for wrongful death, being one created for the benefit of the distributee of the deceased, does not abate with the death of such distributee and if the distributee be a dependent distributee, the administrator who instituted the action may proceed therewith and recover for the estate of the deceased dependent distributee any financial or pecuniary loss suffered by him up to the moment of his death.

The Court's holding in *Adams* is consistent with the prevailing view on this issue: "The prevailing view is that the cause of action vests in the beneficiary immediately upon the wrongful death, becomes his property, and survives to his representative." W. Prosser & W. Keeton, *Prosser and Keeton on the Law of Torts*, 948 (5th ed. 1984) (footnotes omitted).

we find that the circuit court correctly determined that Mr. Asbury, as administrator of Betty Asbury's estate, was entitled to share in the proceeds[10] of the wrongful death settlement award because Betty Asbury was alive at the time of her mother's death.[11]

---

[10] The petitioners argue that the circuit court erred by awarding Mr. Asbury, as the administrator of the estate of Betty Asbury, an equal share of the wrongful death settlement proceeds. W.Va. Code § 55-7-6(b) provides "the court may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed[.]" Given the wide discretion afforded to circuit courts in this statute, we find that the circuit court did not abuse its discretion by awarding an equal share of the wrongful death settlement proceeds to Mr. Asbury, as administrator of the estate of Betty Asbury. While we find the circuit court did not abuse its discretion in awarding Mr. Asbury, as the administrator of the estate of Betty Asbury, an equal share in the present case, we emphasize that, in general, a circuit court is not required to award equal shares to all persons who are distributees under the wrongful death act. Instead, pursuant to W.Va. Code § 55-7-6(b), a circuit court or jury has wide discretion to award wrongful death damages "in . . . proportions" that "may seem fair and just" under the facts of a particular case.

[11] The petitioners also argue that the circuit court erred because Mr. Asbury, as the administrator of the estate of Betty Asbury, lacked standing to intervene in this case because Betty Asbury's estate had been closed prior to the distribution of the wrongful death settlement proceeds. Under the facts of this case, we find no merit in this assignment of error. First, the estate of Betty Asbury could have remained open if counsel for Mrs. Graham's estate had complied with W.Va. Code § 55-7-6 and provided the statutorily required notice to Mr. Asbury, as administrator of the estate of Betty Asbury, informing him that Betty Asbury's estate was a potential distributee of the wrongful death settlement. Further, when Mr. Asbury filed his "Motion to Set Aside Settlement as Invalid or in the Alternative Motion Seeking Court Ordered Distribution of Wrongful Death Proceeds Pursuant to West Virginia Code § 55-7-6," any recovery Betty Asbury's estate could receive was contingent on the circuit court's determination of whether Betty Asbury was a distributee under W.Va. Code § 55-7-6. Thus, Mr. Asbury had no settlement proceeds to administer in Betty Asbury's estate, and no need to reopen the estate, prior to the circuit court's ruling that the estate was entitled to a share of the wrongful death damages.

13

**IV.**

**CONCLUSION**

The circuit court's October 21, 2013, order is affirmed.

Affirmed.

14